E. F. HUTTON & COMPANY, INC., Plaintiff,

v.

JUPITER DEVELOPMENT CORPORATION LIMITED, Brian Patrick Smith, Martin Rogers, Edward Yapchanyk, Anne M. Smith, Al Partee, Morton Manes, and Yorkton Securities, Defendants.

No. 80 Civ. 3226(RJW).

United States District Court, S. D. New York.

Aug. 6, 1981.

---

Snow, Becker, Kroll, Klaris & Krauss, P.C., New York City, for plaintiff E. F. Hutton; Charles Snow, Stanley L. Kantor, New York City, of counsel.

Mokotoff & Katz, New York City, for defendant Brian Patrick Smith; Harold S. Mokotoff, Alan B. Katz, New York City, of counsel.

**ROBERT J. WARD, District Judge.**

This action is maintained under the federal securities laws and principles of common law. Plaintiff E. F. Hutton & Co., Inc. ("Hutton") seeks to recover damages arising from defendants' alleged fraudulent trading of and manipulative practices in connection with certain securities of defendant Jupiter Development Corporation Limited ("Jupiter"). Defendant Brian Patrick Smith moves, pursuant to Rule 14(a), Fed.R.Civ.P., for leave to serve and file a third-party complaint naming one Robert W. Grenley as a third-party defendant. Hutton moves, pursuant to Rule 37(a), Fed. R.Civ.P., for an order compelling Smith to answer all questions asked of him at a deposition conducted on December 16, 1980, as well as all other questions that may be asked of him at an anticipated future deposition. For the reasons hereinafter stated, both motions are denied.

### Discussion

The two motions presently before the Court, while related in a fashion that is discussed at some length *infra*, are sufficiently distinct analytically that it is wisest to treat them separately. The Court accordingly deals first with Smith's motion for leave to serve and file a third-party complaint, and then with Hutton's motion to compel discovery.

### 1. Motion for Leave to Serve and File a Third-Party Complaint

As noted above, this action arises under the federal securities laws and principles of common law. The complaint alleges that Hutton, as agent for certain of its customers, purchased and sold Jupiter stock for these customers' accounts. Proposed third-party defendant Grenley was an employee of Hutton who allegedly participated in the execution of a number of these transactions. The complaint alleges that defendants materially misrepresented to Hutton the value of the Jupiter stock in question, which misrepresentation caused Hutton (1) to recommend Jupiter stock to its customers, and (2) to rely on the value of Jupiter stock for protection in the event any of Hutton's customers failed to pay Hutton for stock that Hutton purchased for them. The gravamen of Hutton's federal securities law claim is that, when the market price of Jupiter stock plummeted, Hutton was damaged by defendants' misrepresentations in two ways: first, Hutton was forced to compensate some of its customers for their losses on the stock; second, Hutton itself was left holding some of the greatly depreciated stock, because certain other Hutton customers who had ordered Jupiter stock through Hutton subsequently refused to pay for it.

According to the allegations of the complaint, Smith, who acted throughout as an agent of Jupiter, was the mastermind of this scheme. He circulated information

about Jupiter to a number of investors and brokers including Hutton. With the assistance of Grenley, Smith ultimately induced Hutton to open a number of new accounts for customers interested in purchasing Jupiter stock, and also got Hutton to recommend Jupiter stock to its current customers. Smith now moves, pursuant to Rule 14(a), Fed.R.Civ.P., for leave to serve and file a third-party complaint seeking indemnification from Grenley in the event that Smith is ultimately found liable to Hutton.

■ Rule 14(a), Fed.R.Civ.P., provides in relevant part that "[a]t any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." In the event more than ten days have expired since the defendant's answer to the complaint was served and filed, the defendant must obtain leave of court before serving and filing the third-party complaint. The question whether such leave should be granted in a particular case is addressed to the sound discretion of the trial court. *Rosario v. Ladies' Garment Cutters' Local 10*, 605 F.2d 1228, 1247 (2d Cir. 1979), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980). Where, as here, a Rule 14 motion is made more than six months after service of the moving party's answer to the complaint, the civil rules of this Court require that leave be refused unless the movant makes a "showing of special circumstances and of the necessity for such relief in the interest of justice." Rule 3(k), Civil Rules of the United States District Court for the Southern District of New York.

■ Smith has made no such showing. The factors to which judges of this district refer in determining whether the requisite "special circumstances" exist include: (1) whether the movant effected any deliberate delay or was derelict in filing the claim, (2) whether prejudice will result to the proposed third-party defendant, (3) whether the trial of the principal action will be delayed or unduly complicated, and (4)

whether the proposed third-party complaint states a claim under which relief may be granted. *Connell v. Bernstein-Macauley, Inc.*, 67 F.R.D. 111, 116 (S.D.N.Y.1975). Here, as demonstrated by the papers upon which he relied in support of his motion to dismiss Hutton's complaint, Smith has been fully aware of Grenley's role in the transactions at issue throughout the period since he interposed his answer to the complaint. Moreover, injection of Grenley into this lawsuit at this late date, when discovery has practically been completed, would inevitably delay termination of the action, because Grenley has conducted no discovery and would have to be given an opportunity to do so. Finally, the proposed third-party complaint fails to state a claim upon which relief may be granted. This complaint, as described by Smith's counsel in an affidavit filed with the Court, seeks indemnification from Grenley for the amount of any judgment entered against Smith in favor of Hutton. Indemnification is unavailable in a case alleging securities fraud, *Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969), *cert. denied*, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970), or common-law fraud, *Stratton Group, Ltd. v. Sprayregen*, 466 F.Supp. 1180, 1185 n.4 (S.D.N.Y.1979). Since the Court finds no indication here of any special circumstances that might excuse Smith's failure to make his Rule 14 motion in a timely fashion, Smith's motion for leave to serve and file a third-party complaint must be denied.

### 2. Motion to Compel Discovery

On December 16, 1980, Smith appeared for a deposition in this action. At the deposition he refused to answer any questions beyond giving his name and address. Smith's counsel stated that his client would refuse to answer any questions concerning the subject matter of the lawsuit. Similarly, Smith refused to produce any documents at his deposition. He based his refusals on his constitutional privilege against self-incrimination.

Subsequently, Smith filed the above-discussed Rule 14 motion for leave to serve

and file a third-party complaint. Smith's motion was filed together with an affidavit that includes the following statement:

The proposed Third-Party Defendant, ROBERT W. GRENLEY, was employed by the Plaintiff at the time these transactions were negotiated. Many of the transactions and orders were placed through ROBERT W. GRENLEY for which there was no authorization.

In order to make and stimulate activity in the issues of JUPITER DEVELOPMENT CORPORATION LIMITED, MR. GRENLEY placed orders without my authorization in the names of myself and other parties including the Defendants and thereafter asserted that these transactions were authorized by me. It is apparent that in the event a judgment is rendered against me, I will have a claim against ROBERT W. GRENLEY in view of the fact that most of the transactions were initiated by him. I am prepared to prove at the time of trial the facts asserted herein.

■ There is no doubt that, as an initial matter, Smith was entitled to invoke the fifth amendment privilege against self-incrimination to avoid testifying at his deposition. The privilege against self-incrimination may be asserted in connection with civil litigation. *Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). The protection of the privilege in a civil action is confined to instances where the witness has reasonable cause to apprehend danger from a direct answer; that is, he must have reasonable cause to believe that a direct answer would support a conviction or furnish a link in the chain of evidence needed to prove a crime. *Klein v. Smith*, 559 F.2d 189, 200 (2d Cir.), *cert. denied*, 434 U.S. 987, 98 S.Ct. 617, 54 L.Ed.2d 482 (1977). The Court is satisfied that Smith, whose case is presently under investigation by the United States Attorney for the Southern District of New York, had such "reasonable cause" here. Hutton does not argue otherwise. Rather, Hutton contends that Smith, by supporting his Rule 14 motion with the affidavit quoted from above, has waived any fifth amendment

privilege that he might otherwise have been entitled to assert.

■ There is no doubt that a waiver of the fifth amendment's privilege against self-incrimination may be inferred from a witness' course of conduct, without any inquiry into whether the witness actually knew of the existence of the privilege and consciously chose to waive it. In its recent decision in *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 317 (2d Cir. 1979), the Court of Appeals for this Circuit said as much when it noted that "[a] witness who fails to invoke the Fifth Amendment against questions as to which he could have claimed it is deemed to have waived his privilege respecting all questions on the same subject matter." Notwithstanding the breadth of the language just quoted, the courts will not lightly infer a waiver of such a basic constitutional guarantee. *See Smith v. United States*, 337 U.S. 137, 150, 69 S.Ct. 1000, 1007, 93 L.Ed. 1264 (1949). Thus, they will not hold that a witness' earlier statement constituted a waiver of his or her fifth amendment privilege unless that statement was both "incriminating," meaning that it increases the witness' chances of criminal prosecution or conviction, *see United States v. James*, 609 F.2d 36, 45 (2d Cir. 1979), *cert. denied*, 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980), and "testimonial," meaning that it was made under oath in the context of a judicial proceeding, *see United States v. Diecidue*, 603 F.2d 535, 552 (5th Cir. 1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980) (witness' admission to a government agent prior to trial insufficiently testimonial to form predicate for waiver of fifth amendment privilege at trial). The rationale for requiring the witness' earlier statement to satisfy these two criteria is to respond to the concerns of fairness that naturally arise when a knowing waiver of a witness' fifth amendment rights is inferred merely from his or her conduct; it is reasoned that, when a statement is both incriminating and testimonial, the statement can fairly be deemed to have been made under circumstances such that

the witness should have known that he or she might, by virtue of having made the statement, be found to have waived the privilege against self-incrimination.

■ The mere fact that a witness has made a prior statement that was both testimonial and incriminating does not necessitate a conclusion that he or she has thereby waived his or her fifth amendment privilege against self-incrimination. Instead, the teaching of the leading case on the subject, *Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951), is that the courts should decide testimonial waiver questions on a case-by-case basis, upon a careful consideration of how seriously the policy concerns relevant to the testimonial waiver issue are implicated by the situation at hand. In *Rogers*, a witness testified before a grand jury that she had given certain records to another person; subsequently, the witness refused, on fifth amendment grounds, to identify the recipient of the records. *Id.* at 368–70, 71 S.Ct. at 439–40. The Court held that, by admitting that she had delivered the records, the witness had waived her privilege not to identify the recipient; the Court reasoned that "[d]isclosure of a fact waives the privilege as to details." *Id.* at 373, 71 S.Ct. at 442.

*Rogers*, while it is often cited as having enunciated the so-called "fact-detail" test to determine whether a testimonial waiver has occurred, is useful to the lower courts chiefly because it articulates the policy considerations that weigh in favor of finding a testimonial waiver. The *Rogers* Court based its decision on two distinct rationales. First, it was concerned that "[t]o uphold a claim of privilege in this case would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony." *Id.* at 371, 71 S.Ct. at 441. Second, since a refusal of the privilege in the case at hand would have presented "no more than a 'mere imaginary possibility' of increasing the [witness'] danger of prosecution," *id.* at 374–75, 71 S.Ct. at 443, the Court felt that to allow the privilege would be to ignore the principle that "the privilege against self-incrimination presupposes a real danger of legal detriment arising from the disclosure," *id.* at 372–73, 71 S.Ct. at 442.

Some courts endeavoring to follow the *Rogers* decision have concentrated on the second policy rationale set forth above and adopted a rule that the privilege must be upheld, even if the questions concern a matter previously discussed and the facts already revealed are incriminating, as long as the answers now sought may tend to incriminate the witness further. *See, e. g., In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 873 (7th Cir. 1979); *United States v. LaRiche*, 549 F.2d 1088, 1096 (6th Cir.), *cert. denied*, 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 383 (1977); *In re Master Key Litigation*, 507 F.2d 292, 294 (9th Cir. 1974); *Usery v. Brandel*, 87 F.R.D. 670, 683 (W.D. Mich.1980). Under this formulation, for the privilege to apply after some testimony by a witness, the information sought subsequent to that testimony must threaten to incriminate the witness further, that is, to increase the witness' danger of criminal prosecution or conviction. *United States v. LaRiche, supra*, 549 F.2d at 1096.

The Court is aware of no case where a court of this Circuit has endorsed the "further incrimination" test for a testimonial waiver. For several reasons, the Court declines to adopt that approach here. First, the Court has difficulty conceiving of a statement that would be incriminating when standing alone, but not *further* incriminating when it follows an earlier incriminating statement. Even a mere reiteration of the earlier incriminating statement would normally be further incriminating, in the sense that term is used here, because such a reiteration would corroborate the earlier statement, making it more difficult for the witness to discount the earlier statement and hence increasing the danger of conviction. *See United States v. Miranti*, 253 F.2d 135, 139–40 (2d Cir. 1958). In other words, strict application of the further incrimination test would limit testimonial waiver to situations where the witness' earlier statement has proven his or her

guilt beyond a reasonable doubt. *See* Note, *Testimonial Waiver of the Privilege Against Self-Incrimination*, 92 Harv.L.Rev. 1752, 1757–58 (1979). The Court does not believe that the *Rogers* Court intended such a result.

Indeed, the further incrimination test essentially dispenses with the concept of testimonial waiver entirely, because it creates a standard for determining when a testimonial waiver occurs that is really no different from the test that governs whether the privilege may be invoked as an initial matter. That is, the further incrimination test precludes finding a testimonial waiver of the fifth amendment privilege when the further information sought could increase the witness' danger of prosecution or conviction. However, this is precisely the formulation by which the courts have traditionally determined whether, absent any waiver, the privilege may be invoked. *See Hoffman v. United States*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). Plainly, the *Rogers* Court intended for the scope of inquiry available *after* a testimonial waiver of the fifth amendment privilege to be broader than that permissible *before* the waiver occurred. But the further incrimination test, being equivalent to the test used to determine whether the privilege can be invoked as an initial matter, prevents a testimonial waiver from ever having the intended broadening effect. *See* Note, *supra*, 92 Harv.L.Rev. at 1756.

A better approach to the testimonial waiver problem, in the Court's view, is to focus on the other policy concern relied upon by the *Rogers* Court, namely, the principle that a claim of privilege should not be upheld where to do so would open the way to distortion of facts by permitting a witness to pick a convenient stopping place in his or her testimony. Such an approach finds support in the decision of the Court of Appeals for this Circuit in *United States v. St. Pierre*, 132 F.2d 837, 840 (2d Cir. 1942), *cert. dismissed*, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943), where Judge Learned Hand wrote:

It must be conceded that the privilege is to suppress the truth, but that does not mean that it is a privilege to garble it; although its exercise deprives the parties of evidence, it should not furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition. The time for a witness to protect himself is when the decision is first presented to him; he needs nothing more, and anything more puts a mischievous instrument at his disposal.

*See also Prentice v. Hsu*, 280 F.Supp. 384, 388 (S.D.N.Y.1968); *United States ex rel. Laino v. Warden of Wallkill Prison*, 246 F.Supp. 72, 99–100 (S.D.N.Y.1965), *aff'd*, 355 F.2d 208 (2d Cir. 1966) (both focusing on danger of distortion in deciding testimonial waiver issue).

■ As noted above, a waiver of the fifth amendment privilege against self-incrimination should be inferred only in the most compelling of circumstances. Such circumstances exist only when a failure to find a waiver would prejudice a party to the action, and a finding of a waiver would not be unfair to the witness. An approach that focuses on distortion is well suited for determining whether these circumstances are present in any particular case. First, where there is a significant likelihood that the witness' earlier statement, if allowed to stand unclarified, would leave the finder of fact with a distorted view of the facts, on which view the finder of fact might rely to the detriment of a party to the lawsuit, the concern to avoid prejudice is powerfully implicated. Second, where the witness had reason to know that his or her earlier testimony would create such prejudicial distortion, and hence that he or she might subsequently be asked to clarify matters, a court has an additional basis for concluding that there is no unfairness to the witness in holding that he or she has waived his or her fifth amendment privilege.[1]

■ On the basis of the foregoing analysis, then, the Court holds that a testimonial waiver of a witness' fifth amend-

---

1. The primary basis for determining whether the witness would be subjected to any unfairness by finding a testimonial waiver is the inquiry into whether the witness' statement was both incriminating and testimonial. See text *supra*.

ment privilege against self-incrimination occurs only when (1) the witness has made an incriminating, testimonial statement; (2) that statement creates a significant likelihood that, absent further testimony, the finder of fact will be left with and prone to rely on a distorted version of the truth stemming from the earlier testimony; and (3) the witness had reason to know that the statement would create such a distortion. Applying this test to the facts of the case at hand, the Court concludes that no testimonial waiver has occurred here. The incriminating, testimonial statement that Hutton argues formed the predicate for a waiver is Smith's affidavit submitted in support of his Rule 14 motion.[2] However, the Court, by today's decision, has denied Smith's Rule 14 motion as being untimely filed. As a result, even if Smith's affidavit presents a distorted view of the facts, no prejudice can inhere to Hutton as a result of such distortion, because the Court has not relied on the Smith affidavit. The second prong of the test for a testimonial waiver is therefore not met.[3] Since Smith has accordingly not waived his fifth amendment privilege against self-incrimination, Hutton's motion to compel discovery must be denied.

### Conclusion

Smith's motion for leave to serve and file a third-party complaint, pursuant to Rule 14(a), Fed.R.Civ.P., is denied. Hutton's mo-

tion to compel discovery, pursuant to Rule 37(a), Fed.R.Civ.P., is likewise denied. Discovery is to be completed by September 4, 1981 and a pre-trial order filed by October 2, 1981.

It is so ordered.

---

**2.** This statement was indeed both testimonial and incriminating. Although the classic example of a testimonial statement is when the witness discloses information while on the stand during trial, statements made by a witness during the course of his or her deposition, *see, e. g., Ionian Shipping Co. v. British Law Insurance Co.*, 314 F.Supp. 1121, 1124 (S.D.N.Y. 1970), or (as here) in an affidavit filed with the court, *see, e. g., Camelot Group, Ltd. v. W. A. Krueger Co.*, 486 F.Supp. 1221, 1229–30 (S.D.N.Y.1980), are also sufficiently testimonial to form the predicate for a waiver. A statement by a witness is normally thought to be incriminating if it could provide a link in the chain of evidence needed in a subsequent prosecution. *In re Folding Carton Antitrust Litigation, supra,* 609 F.2d at 873. In his affidavit, Smith admits (1) that he was authorized to place orders for a number of accounts, including his own; (2) that these orders could be placed through Grenley; and (3) that he knew Grenley. All of these facts are potential links in a possible

chain of evidence against Smith, making his affidavit without doubt incriminating as that term is defined above.

**3.** This prong might be satisfied, however, were Smith to make this or a similar statement under different circumstances; for example, the requisite likelihood of prejudice might exist were Smith to take the stand at trial and testify to the substance of what he stated in his affidavit. The Court cannot conclude at this point that Smith does indeed intend to testify at the trial of this action. While Smith stated in his affidavit that "I am prepared to prove at the time of trial the facts asserted herein," he did not say that his proof would consist of his own testimony on the subject. Even if he had, the Court still could not conclude that Smith now intends to testify at trial, because this assertion in his affidavit was predicated on the erroneous assumption that he would be allowed to implead Grenley.