Pasquale AULETTA, Harold Dobson, Earl Goods, and Robert Skaggs, individually on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

James H. TULLY, Individually and as the Commissioner of the New York State Department of Taxation and Finance, Victor Bahou, individually and as President of the New York State Civil Service Commission, Josephine L. Gambino and James T. McFarland, individually and as members of the New York State Civil Service Commission and W. Barry Lorch, individually and as Director of Classification and Compensation of the New York State Department of Civil Service, Defendants.

Frank GIACCONE, Marie Laudati, William Barr, and Henry Orlow, individually on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

James H. TULLY, Individually and as the Commissioner of the New York State Department of Taxation and Finance, Victor Bahou, individually and as President of the New York State Civil Service Commission, Josephine L. Gambino and James T. McFarland, individually and as members of the New York State Civil Service Commission and W. Barry Lorch, individually and as Director of Classification and Compensation of the New York State Department of Civil Service, Defendants.

Nos. 82–CV–924, 82–CV–1204.

United States District Court, N.D. New York.

Oct. 3, 1983.

192

Joan Goldberg, New York City, for plaintiffs.

Robert Abrams, Atty. Gen. of the State of New York, Albany, N.Y., for defendants; James McSparron, Judith I. Ratner, Asst. Attys. Gen., Albany, N.Y., of counsel.

Memorandum-Decision and Order

MINER, District Judge.

I

These actions arise out of a decision by the New York State Department of Taxa-

tion and Finance (hereinafter "Department") which effected a reclassification of certain civil service positions, and resulted in promotion of certain individuals, within the Department. Alleging a denial of equal protection of the law in violation of the fourteenth amendment of the United States Constitution[1] stemming from the reclassification, plaintiffs bring these class actions[2] seeking declaratory and injunctive relief, as well as back pay, pursuant to the provisions of 42 U.S.C. § 1983. Jurisdiction in this Court is predicated upon 28 U.S.C. §§ 1331 and 1343. Before the Court are defendants' motions for summary judgment pursuant to Fed.R.Civ.P. 56(b).

II

According to the allegations in the "Auletta" complaint (82–CV–924), the Department, in 1975, adopted a proposal made "under the auspices of the Department of the Budget and paid for with a federal grant." Auletta Complaint, ¶ 24. The proposal was intended to increase the efficiency of the Department, to increase the number of career personnel remaining with the Department, and to increase the tax revenues collected by the State of New York. Id., ¶ 25. The proposal resulted in the division of the Department's personnel into two categories: tax technicians, performing administrative office tasks, and tax auditors, primarily performing field audits. Id., ¶ 27.[3]

In 1978, pursuant to this reclassification plan, defendant Lorch, Director of Classification and Compensation, reclassified as grade eighteen sales tax auditors I all grade fourteen assistant sales tax auditors who had been with the Department for two

---

1. Plaintiffs also allege a violation of the provisions of the N.Y. Const. art. 5, § 6, which provides in relevant part:

    Appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive ....

2. No motion for certification of the class pursuant to Fed.R.Civ.P. 23(c) has been made yet by plaintiffs.

3. The "squad" system had been employed in the New York City metropolitan area prior to the adoption of the reclassification plan.

years, without requiring any of them to meet the prerequisites of a four-year college degree and twenty-four college credits in accounting or two years of on the job training designed specifically for new recruits. No similar upgrading was made with respect to sales tax technicians. Finally, the supervisory duties originally performed by grade eighteen sales tax auditors were assigned to grade twenty-three sales tax auditors II, and the "second line supervisory" duties were assigned to grade twenty-seven employees.

Dissatisfied with this assignment of job functions, a number of employees, in June of 1978, filed complaints with the Director of Classification and Compensation pursuant to N.Y.Civ.Serv.Law § 120(1).[4] In those proceedings, the aggrieved employees sought to have their grade eighteen and grade twenty-three positions upgraded to grades twenty-three and twenty-seven, respectively, to reflect the reassignment of job functions. In other words, the aggrieved employees alleged that their former supervisory duties had been reassigned to employees in higher grade positions. Accordingly, they sought a corresponding appointment to those higher grade positions.

Defendant Lorch, as Director of Classification and Compensation, denied the request for an upgrading of positions. An appeal was filed soon thereafter with defendants Bahou, Gambino and McFarland of the New York State Civil Service Commission pursuant to N.Y.Civ.Serv.Law § 120(2).[5] At the conclusion of that appeal, the Commission held that the reclassification of positions and the reassignment of job duties were done "prematurely" and required a "roll-back" from the new auditor positions to the former examiner positions.

Howard Miller, the Director of the Budget, and defendant Tully, Commissioner of the Department, each requested of the Civil Service Commission a new hearing to determine if the reclassification of jobs was justified by a ."substantial change of duties." *See* N.Y.Civ.Serv.Law § 132(2).[6]

4. N.Y.Civ.Serv.Law § 120(1) provides:
Applications to director. Any employee occupying a position, the title or salary grade of which is subject to the jurisdiction of the director of the classification and compensation division, and any appointing officer, with respect to any such position or positions in his department or agency, may apply to the director, on a form prescribed and furnished by him, for a review and change of the classification or allocation of such positions. Such employee or appointing officer or their representatives shall be afforded a reasonable opportunity to present facts in support of or in relation to such application at a time and in such manner as may be specified by the director. The director shall examine and review any such application and may make such changes in classification or allocation as may be just and equitable. The director shall have the power to designate an officer or employee of the division to conduct a hearing with relation to any application for such reclassification or reallocation and to report to the director thereon.

5. N.Y.Civ.Serv.Law § 120(2) provides:
Appeals to the state civil service commission. Any employee or appointing officer aggrieved by a determination of the director may appeal from such determination to the state civil service commission. Such appeal must be made within sixty days after receipt of written notice of such determination. Such employee or appointing officer or their representatives shall be afforded an opportunity to present facts and arguments in support of or in relation to such appeal at a time and place and in such manner as may be prescribed by the commission. The commission shall examine and review such appeal and make such changes in the classification or allocation as may be just and equitable. Determinations of the commission shall be transmitted to the director of the budget, the director of the classification and compensation division, and the employees and department heads affected thereby.

6. N.Y.Civ.Serv.Law § 132(2) provides:
When a position allocated to a salary grade in section one hundred thirty of this article is reclassified to a title allocated to a higher salary grade, and the president finds that such reclassification represents no substantial change in duties and responsibilities from those associated with the former title, the incumbent thereof may continue to serve in such position without further examination, and his salary in this new title shall be determined in accordance with the provisions of this article. This subdivision has no application to a reclassification obtained pursuant to subdivision five of section one hundred twenty-one of this article.

A new hearing then was provided in February of 1980. Mr. Quinn, former Executive Director of the Civil Service Commission, presided at that hearing and determined that plaintiffs Dobson, Auletta and those persons similarly situated properly were reassigned to journeyman positions. Finally, in August of 1980, the Commission determined that the assignment of grade fourteen journeyman duties to grade eighteen auditors was proper, in effect, upholding the validity of the original reclassification.

These administrative determinations were reviewed in an Article 78 proceeding in New York Supreme Court, Albany County. The determinations were found not to be arbitrary and capricious and, therefore, were upheld by the reviewing court. This determination was affirmed by the Appellate Division, Third Department, *Adelman v. Bahou*, 85 A.D.2d 862, 446 N.Y.S.2d 500 (3d Dep't 1981) and leave to appeal to the New York Court of Appeals was denied, 56 N.Y.2d 502, 450 N.Y.S.2d 1023, 435 N.E.2d 1099 (1982).

Plaintiffs Auletta, Dobson, Giaccone and Barr, prior to the reclassification, held grade eighteen positions within the Department. Sometime after the reclassification, each of these individuals was promoted *provisionally* to a grade twenty-three position. Subsequently, however, each has been reassigned to his former permanent grade eighteen position. It is the contention of these plaintiffs that they are entitled to *permanent* appointment in grade twenty-three positions by virtue of the title restructuring plan.

Similarly, plaintiff Orlow is a grade eighteen excise tax auditor I. He alleges that, prior to the title structure change, he performed supervisory duties as a grade eighteen tax examiner. Here, Orlow complains that, although he still is a grade eighteen employee, he no longer is performing supervisory duties. Rather, he now is a journeyman along with former grade fourteen journeyman employees who have been upgraded to grade eighteen. It is Orlow's contention that he and similarly situated others are entitled to promotion to grade twenty-three positions.

Plaintiff Laudati, originally a grade fourteen tax examiner with the Department, had her position reclassified to tax technician in 1977 pursuant to the overall plan for title restructuring. As a tax technician, Laudati alleges, she no longer performs desk audits as she did while a tax examiner. According to Laudati, however, those tax examiners who were reclassified as tax auditors at grade eighteen perform the same auditing functions that Laudati performed as a tax examiner. Plaintiff alleges that she never was informed of her option to become a grade eighteen auditor, rather than a grade fourteen technician. Similarly, it appears that plaintiffs Goods and Skaggs remain in their grade fourteen positions, notwithstanding the promotion of certain other grade fourteen employees.

Defendants offer several arguments in support of the instant motions for summary judgment. As a threshold matter, defendants maintain that this action is barred under well established principles of res judicata and collateral estoppel, or under principles of stare decisis. Alternatively, defendants maintain that the action is barred by the three year statute of limitations applied in § 1983 actions. Defendants also contend that plaintiffs have alleged no constitutional deprivation inasmuch as none of the plaintiffs has a constitutionally protected property right in his or her position, and because there has been no showing of an intent to discriminate against any of the named plaintiffs or against any members of the class plaintiffs purport to represent. Finally, defendants assert that plaintiffs lack standing to represent certain members of the purported class, and that the action is moot with respect to certain of the named plaintiffs.

### III

Summary judgment is a drastic remedy which should be granted only when it is clear that the requirements of Fed.R. Civ.P. 56 have been satisfied. *United States v. Bosurgi*, 530 F.2d 1105, 1110 (2d

Cir.1976). Moreover, "[s]ummary judgment is to be used not as a substitute for trial, but only when '... it is quite clear what the truth is [and] that no genuine issue remains for trial.' *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944)." *Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 184–185 (8th Cir.1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977). Indeed, the reviewing court must accept as true the factual statements in the opposing party's affidavits, draw all permissible inferences in that party's favor, *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2d Cir. 1980), and resolve any doubts in favor of the latter, *American Mfrs. Mutual Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272 (2d Cir.1967). In short, the movant has the dual burden of demonstrating that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Here, defendants have met this heavy burden with respect to their statute of limitations defense.

Since Congress has provided no federal limitations period for § 1983 actions, federal courts must look to the most appropriate state limitations period as well as relevant tolling provisions to determine if an action brought pursuant to § 1983 has been timely commenced. *Board of Regents v. Tomanio*, 446 U.S. 478, 483, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency*, 421 U.S. 454, 462–464, 95 S.Ct. 1716, 1721–1722, 44 L.Ed.2d 295 (1975) (§ 1981 action). It is beyond cavil that, in making this determination here, this Court must apply the three year limitations period provided by N.Y.Civ.Prac.Law and Rules § 214(2).[7] *Pauk v. Board of Trustees of City University of New York*, 654 F.2d 856 (2d Cir.

1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982).

Accordingly, the dispositive inquiry here is to determine when the claims alleged by plaintiffs accrued. This question, unlike that of which limitations period to apply, is one of federal, not state, law. *Keating v. Carey*, 706 F.2d 377, 382 (2d Cir.1983). Moreover, "federal law ... 'establishes as the time of accrual that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981) (quoting *Bireline v. Seagondollar*, 567 F.2d 260, 263 (4th Cir. 1977).

In the case at bar, plaintiffs do not dispute that the reclassification of civil service positions within the Department took place in 1977. In this regard, however, plaintiffs assert that "[t]he 1977 changes affected title only," Plaintiffs' Memorandum of Law, p. 10, but plaintiffs do admit that "commencing sometime during 1978, the reclassification began," *Id.* Finally, plaintiffs acknowledge that they instituted administrative proceedings challenging the reclassification in June of 1978 and that these proceedings terminated in August of 1979. The "Auletta" and "Giaccone" actions were commenced on September 1, 1982 and on November 1, 1982 respectively.

In light of these undisputed facts, this Court finds untenable plaintiffs assertion that no injury which would start the limitations period running had occurred prior to the institution of administrative proceedings. Common sense and experience compel the conclusion that plaintiffs would not have brought administrative proceedings had they been unaware of the "injuries" giving rise to this action.

Plaintiffs' contention that "the critical date in these actions is not the date of title

---

7. N.Y.Civ.Prac.Law and Rules § 214 provides in relevant part:

> The following actions must be commenced within three years.

> ....

> An action to recover upon a liability, penalty or forfeiture created or imposed by statute

> ....

restructuring but the date that the Grade 14's who were upgraded to Grade 18 were not reduced to Grade 14 *after the August 1979 determination of the Civil Service Commission," id.,* p. 9 (emphasis added), must be rejected in light of the New York rule that there is no tolling of the statute of limitations during the pendency of administrative proceedings. *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *see generally* N.Y.Civ.Prac.Law and Rules §§ 204–210. Plaintiffs' attempt to avoid the effects of this rule by comparing their situation with the factual circumstances presented in *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 is misplaced.

Plaintiffs are correct in their statement that, in *Tomanio,* "the Supreme Court held that the three-year period began after the plaintiff had sought the administrative remedies available from New York statutes." Plaintiff's Memorandum, p. 9. The factual circumstances presented in *Tomanio,* however, are significantly different from the situation at bar.

In *Tomanio,* plaintiff had practiced chiropractic medicine without a license in the State of New York since 1958. In 1963, however, the State enacted a statute requiring state licensing and provided three methods by which to obtain a license, two of which were available to plaintiff as a previously practicing chiropractor. Plaintiff was unsuccessful in attempting to pass a state administered examination, one means of obtaining a state license. Accordingly, plaintiff applied for a waiver of the examination requirement. This application was denied by the Board of Regents on November 19, 1971. After a lengthy

but unsuccessful pursuit of her state court remedies seeking review of the Board's denial, plaintiff commenced an action in federal district court pursuant to 42 U.S.C. § 1983 alleging a due process violation arising from the denial of her application. Both the district court and the court of appeals, as well as the Supreme Court, concluded, as plaintiffs here recognize, that Tomanio's claim accrued at the time her administrative application was denied. However, it is clear that any due process claim alleged by Tomanio to have arisen from the denial could not have accrued prior to that denial. Tomanio did not attack the validity of the statute requiring state licensing of chiropractors, nor did she object to the procedures made available to obtain such a license. Her only claim was for a due process deprivation stemming from the denial.

Here, in marked contrast, plaintiffs instituted their administrative proceedings to contest the allegedly discriminatory reclassifications which occurred in 1977. Since neither the subsequent administrative proceedings nor the state court Article 78 proceedings tolled the statute of limitations for plaintiffs' § 1983 claims, this Court finds inescapable the conclusion that plaintiffs' claims concerning the reclassification of positions within the department have not timely been commenced.[8]

Plaintiffs also have requested a declaration that their right to due process was infringed by defendants' having allowed Mr. Quinn to preside at the second Civil Service Commission hearing which upheld the validity of the 1977 job reclassification. More specifically, plaintiffs complain that "the decision of defendant[9] Quinn violated

---

**8.** This conclusion makes unnecessary a determination of defendants' assertions that plaintiffs' claims are barred by the doctrines of res judicata and collateral estoppel, as well as defendants' contention that plaintiffs had no protected property interests in their positions and were not subjected to any intentional discrimination. Similarly, defendants' contentions with respect to standing and mootness, in large part, need not be addressed. Finally, having concluded that plaintiffs have no viable federal claim here,

this Court declines to exercise its pendent jurisdiction to consider the propriety of defendants' actions when measured against the pertinent provisions of the New York State Constitution. *McFadden Express, Inc. v. Adley Corp.,* 346 F.2d 424 (2d Cir.1965); *Felman v. City of New York,* 493 F.Supp. 537 (S.D.N.Y.1980); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

**9.** This is the only allegation referring to Mr. Quinn *as a defendant* in the complaint.

the Due Process Clause of the U.S. Constitution in that he acted as hearing Officer to review a decision previously made by himself." Auletta Complaint, ¶ 54. Since the subject of the hearings presided over by Mr. Quinn was the propriety of the reclassification scheme asserted by plaintiffs, claims which this Court finds time-barred, plaintiffs' due process claim has been rendered moot. Moreover, absent any allegation that plaintiffs again will suffer from due process irregularities, plaintiffs lack standing to obtain the declaratory relief they seek in this regard. *Lyons v. City of Los Angeles,* — U.S. —, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

### IV

Accordingly, for the reasons mentioned above, defendants' motions for summary judgment in each of the above captioned actions, Fed.R.Civ.P. 56 are granted.

It is so Ordered.