LOCAL 144, HOTEL, HOSPITAL, NURSING HOME AND ALLIED SERVICES UNION, SEIU, AFL–CIO, Plaintiff,

v.

C.N.H. MANAGEMENT ASSOCIATES, INC., Marvin Neiman, individually and as sole proprietor of Concourse Nursing Home, Defendants.

Marvin NEIMAN, individually and as sole proprietor of Concourse Nursing Home, Third–Party Plaintiff,

v.

David AXELROD, M.D., individually and as Commissioner of the State of New York Department of Health; William J. Gormley, both individually and as Deputy Director of the State of New York Department of Health; Frank J. McKinney, and Peter Ottley, Third–Party Defendants.

No. 87 Civ. 2778 (RWS).

United States District Court,
S.D. New York.

June 1, 1990.

Vladeck, Waldman, Elias & Engelhard, P.C. (Barbara J. Olshansky, of counsel), New York City, for plaintiff and third-party defendants Frank A. McKinney and Peter Ottley.

Marvin Neiman, P.C. (Gold & Wachtel, Lord Day & Lord, Barrett Smith, New York City, of counsel), for defendant Marvin Neiman.

### · OPINION

SWEET, District Judge.

Plaintiff, Local 144, Hotel, Hospital, Nursing Home & Allied Service Union, SEIU, AFL–CIO ("Local 144") and third-party defendants Frank A. McKinney ("McKinney") and Peter Ottley ("Ottley") (collectively, "M & O") have moved for an order dismissing defendant Marvin Neiman's ("Neiman") Third–Party Complaint and Counterclaims, upon the grounds that the Third–Party Complaint is untimely, that the second counterclaim and first cause of action fails to state a claim upon which relief may be granted, and is barred by the statute of limitations, that the third counterclaim and second cause of action fail to state a claim upon which relief may be granted, and that a defense founded upon documentary evidence and failure to plead · fraud adequately precludes the fourth counterclaim and third cause of action.[1] Local 144 and M & O have also moved for sanctions pursuant to Federal Rule of Civil Procedure 11. Neiman has cross-moved for leave to serve and file the Third–Party Complaint pursuant to Federal Rule of Civil Procedure 14(a). For the reasons set forth below, the motion is granted in part and the cross-motion is denied.

Parties

Local 144 is the certified bargaining agent for employees at the Concourse Nursing Home ("Concourse").

CNH, a management company, is one of several vendors providing labor services at Concourse.

McKinney has been an officer of Local 144 for the period relevant to the Third–Party Complaint.

Ottley was the president of Local 144 during the period relevant to the Third–Party Complaint.

Neiman has been the operator of Concourse from late 1974 to the present.

David Axelrod ("Axelrod") is the Commissioner of the New York State Department of Health and has been during the period relevant to the Third–Party Com-

---

1. The three causes of action contained in the third-party complaint against the third-party defendants also constitute the second, third, and fourth counterclaims against Local 144. They are referred to herein as the first, second, and third claims. The first counterclaim is alleged solely against Local 144 and is not the subject of either the motion or cross-motion.

plaint and William F. Gormley ("Gormley") is a Deputy Director of the same Department and formerly was the Director of the Bureau of Residential Health Care Facility Reimbursement. Axelrod and Gormley (collectively, "A & G") are sued only in their capacity as officials of the State.

Prior Proceedings

The facts and prior proceedings were set forth in the court's May 23, 1989 opinion, familiarity with which is assumed and remain unaltered by this submission and will be repeated as necessary to place these motions in context. On April 24, 1987, Local 144 brought an action against CNH and Neiman, individually and as sole proprietor of Concourse. The action arose out of the defendants' failure to honor a provision of the collective bargaining agreement covering employees working at Concourse to pay the industry-wide level of wages and benefits. On March 19, 1987, the Arbitrator, John Sands, issued an Interim Opinion and Award finding that Neiman, as nursing home operator, had received more than six million dollars in reimbursement monies from the State to pay parity for the period April 1, 1981 through December 31, 1984 and had received sufficient additional reimbursement to pay for parity for the period after January 1, 1985. The Arbitrator also found that the failure to disburse the monies to the employees was an intentional and egregious breach of contract. In accordance with his determination, he directed CNH "to pay the minimum amount due —$6,271,240—plus interest" into an escrow account. CNH and Neiman failed to comply with the Award.

On April 24, 1987 Local 144 filed the complaint in this action against defendants alleging four causes of action. The first and second causes of action sought enforcement of the Award against CNH and Neiman, respectively. The third cause of action stated a claim of equitable subrogation against defendant Neiman and the fourth cause of action set forth a RICO claim against Neiman. Local 144 moved for an order confirming the Award and directing CNH to comply with it. This motion involved the claim for relief under the first cause of action. CNH cross moved for an order dismissing Local 144's motion on the ground that the Award was not final and, therefore, not subject to judicial confirmation or alternatively, that the Arbitrator had exceeded his powers and fashioned an award beyond his authority.

On September 16, 1987, the court granted in part and denied in part both the motion and the cross-motion. On November 9, 1987, a judgment was signed dismissing the case pursuant to the opinion of September 16. Local 144 filed a motion seeking amendment of the judgment and deleting the reference to dismissal of the case and reducing the judgment to a specific dollar amount to be paid into the escrow account. Defendants cross-moved for relief from the judgment. The motions were heard on December 16, 1987 and the Court stayed its direction that CNH pay the specified amount due pending the Arbitrator's Final Award, reopened the instant matter and reinstated the remaining causes of action. The parties proceeded to conduct discovery.

On January 6, 1988 the Arbitrator conducted further hearings and issued a Final Award. On December 14, 1988 Local 144 filed for an order confirming the Final Award in all respects. On January 23, 1989 CNH and Neiman cross-moved for an order vacating the Award. On January 27, 1989 Local 144 filed for leave to amend its complaint. On March 30, 1989 Neiman and CNH moved to quash and for a protective order preventing Local 144 from obtaining access to Neiman's financial records. The motion was denied on May 5, 1989. By the opinion of May 23, the Final Award was confirmed to the extent it ordered payments totaling $8,757,709 plus interest for 1981 to 1985 but vacated the amount awarded for 1986 and 1987. Local 144's motion to amend the complaint was granted except for the proposed claim for an accounting. On June 8, 1989 Local 144 filed the first amended complaint.

On July 13, 1989 Local 144 moved to compel discovery in response to the sixth request for documents and Neiman later moved to quash the subpoena served in

connection with the document demand. At a pre-trial conference the parties agreed to defer disposition in view of an anticipated ruling from the Arbitrator in a related matter considered relevant to settlement. On December 27, 1989 Neiman filed his Answer and Counterclaims and Third–Party Complaint ("Third–Party Complaint") to the first amended complaint.

On January 15, 1990 the Arbitrator rendered the decision and Local 144, at the pretrial conference of January 24, renewed its request on the pending motions. On February 15, the court granted both motions in part. On January 19, Local 144 made this motion to dismiss Neiman's Third–Party Complaint and counterclaims and on February 7, 1990 Neiman cross-moved for an order pursuant to Rule 14(a) for leave to serve and file the third-party complaint. Oral argument was heard on February 16 and the motions were considered fully submitted as of that date. On March 16, 1990 Neiman moved for reconsideration of the February 15 order and oral argument was heard for judgment on the pleadings of the fourth and fifth causes of action set forth in the Amended Complaint. On May 5, 1990, the court denied Neiman's motion to reconsider the order dated February 15, 1990. The motion for judgment on the pleadings is still pending.

The Pleadings

Neiman seeks in his "Answer, Counterclaims and Third–Party Complaint" dated December 22, 1989 to plead four counterclaims and to assert three causes of action against M & O and the two representatives of the State of New York (the "State"), A & G.

In the first cause of action, Neiman claims that he was injured by an alleged conspiracy among Local 144, M & O and A & G "to deprive Neiman of his rights under the U.S. Constitution and the laws of the United States and of this state." The second cause of action seeks specific performance of an alleged contract executed by Neiman and Gormley on October 6, 1989. Neiman's third cause of action asserts that Local 144 and A & G fraudulently induced Neiman to participate in the negotiations

between Local 144 and CNH and to make an application for additional Medicaid reimbursement on behalf of CNH, and thus conspired to change the reimbursement methodology so that CNH did not receive reimbursement for the costs of non-union personnel.

I. The motion to dismiss the Third–Party Complaint

Rule 14(a) and Local Rule 3(k)

Rule 14(a) of the Federal Rules of Civil Procedure provides in pertinent part that:

[A]t any time after commencement of the action, a defending party ... may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him.

Fed.R.Civ.P. 14(a). If the defendant fails to file a third-party complaint within ten days of its answer, the trial court has discretion to permit impleader. 6 C. Wright & A. Miller, Federal Practice & Procedure § 1443, at 208. In the Southern and Eastern Districts of New York, pursuant to Local Rule 3(k) a defendant seeking leave to file the third-party complaint after six months of filing the answer must make a showing of "special circumstances and of the necessity for such relief." Rule 3(k), Uniform Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York.

The decision to permit impleader is within the discretion of the court and courts will "balance the benefits derived from impleader ... against the potential prejudice to the plaintiff and third-party defendants." *Sribnyj v. City of New York*, No. 85–Civ. 2770, 1988 WL 42110 (S.D.N.Y. April 25, 1988). In applying the rules, a court may consider whether: (1) the movant deliberately delayed or was derelict in filing the motion; (2) whether impleading would delay or unduly complicate the trial; and (3) whether impleading would prejudice the third-party defendants; and (4) whether the proposed third-party complaint states a claim under which relief may be granted. *See, e.g., E.F. Hutton & Co. v. Jupiter Dev. Corp.*, 91 F.R.D. 110, 113 (S.D.N.Y.

1981). Moreover, although Rule 14(a) allows for liberal construction, Rule 3(k) is designed to place the burden on the defendant to show special circumstances that could outweigh the prejudice to the parties. *In Re "Agent Orange Product Liability Litig.*, 100 F.R.D. 778, 781 (E.D.N.Y.1984) ("defendant bears the burden of showing excuse for delay"). As the Court in *In Re "Agent Orange"*, stated, "[a]ttorneys violate the six-month rule at their peril." *Id.*, at 780.

To meet the "special circumstances" requirement, Neiman proffers the following arguments: first, that Local 144 has pushed this case away from settlement and has failed to include the State as a party, thus placing "the burden" on Neiman to include the State; second, that the State has not proceeded expeditiously as it promised to in a letter agreement dated October 6, 1989 which took over one year to procure and Neiman did not wish "to antagonize" the State prior to the procurement by filing of the third-party complaint; and third, that the eleventh amendment now would not present a bar to the bringing of one of the claims. None of these arguments excuses the delay or warrants a finding of "special circumstances" such that the prejudice to Local 144 or the third-party defendants is outweighed.

Neiman's first argument seeks to place the onus on Local 144 for not making the State a party to this action. In a reply letter to the court Neiman states that:

> to now try and bring about a resolution *without* one of the three parties [the State] who have participated for the last 12 years, is simply unfair ... [t]he Union simply is in bad faith when it now excludes the persons which have represented, represent now, and will continue to represent the source of funding in the *continuing* association between CNH

and Local 144 ... for Local 144, to now seek to divorce the State from this specific instance is foolish, intellectually dishonest and a complete change in its own course of conduct.

Neiman's first argument, in an attempt to shift improperly his burden, inverts what is at issue in this motion. Local 144 may sue whomever it chooses to sue. It is Neiman who seeks to include parties and thus pursuant to Rule 3(k), must show why, at this late date, these parties should be included when Neiman has known all along the posture of these parties and their relevance to the claims at issue. Neiman has failed to make the required showing.

Neiman's second argument is similarly unpersuasive. He argues that he could not file this third-party complaint prior to the procurement of the October 6, 1989 letter. However, the letter is, to a large extent irrelevant to the parity action now before the Court and would introduce myriad unrelated issues. The letter expresses Neiman's agreement with the State regarding the State's willingness to recalculate some of Concourse's reimbursement appeals and the process by which this matter would be resolved. Neiman's litigation strategy with respect to the State in a corollary proceeding does not provide justification for the delay in filing this third-party complaint and cannot outweigh the prejudice to Local 144 by requiring additional discovery and further delay in this case.[2]

Finally, Neiman's third argument is that the recent Supreme Court decision in *Golden State Transit Corp. v. The City of Los Angeles*, —— U.S. ——, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989), now allegedly permits Neiman to assert a § 1983 cause of action against the State because the Court recognized an enforceable, federally protected right against the government's interference with the collective bargaining process.

---

**2.** Neiman's assertion that failure to permit leave to file now will prevent final resolution of this case is contingent upon an outcome of this case that would permit Neiman a right of indemnification against the State. Accordingly, the certain delay that would ensue should Neiman be granted leave to file the Third–Party Complaint in the present case outweighs the contingent delay that may occur should Neiman be deemed liable but with a right of indemnification. Similarly, resolution of the present action may not result in the need for the third-party defendants to defend a subsequent action and therefore Neiman has presented no reason that outweighs the certain prejudice to include the parties now.

Without addressing the merits of this proposition, the recent opinion is not a valid justification for the delay in bringing this third-party complaint. Not only is this claim only one of those Neiman seeks to bring, the recent opinion, if it could be read to support Neiman, is merely a windfall, not a reason for waiting two and one-half years to bring a Third–Party Complaint.

Finally, and most persuasively, the discovery in the case as it is presently posited is substantially complete, and it is anticipated that a trial over the summer is feasible.

Neiman has failed to make a showing that special circumstances should permit him to file this Third–Party Complaint two and one-half years after service of his original answer, nearly three years after the complaint was filed, and almost six years after the actual allegations upon which the claims are based were known to him. The civil rules of this court indicate that leave to file here is inappropriate, *see Redmond v. St. John's Univ.*, 1989 WL 16069 (E.D.N.Y.) at 10; *E.F. Hutton & Co.*, 91 F.R.D. at 113, especially in view of Local 144's claims, the amount of time and money already spent in this case, and the absence of either an adequate excuse for Neiman's delay or apparent gains in judicial economy. *In Re Agent Orange*, 100 F.R.D. at 781.

II. The motion to dismiss the Counterclaims

Absent the third-party complaint, the three counterclaims still remain against Local 144. Accordingly, each is discussed in turn.

A. The Statute of Limitations Bars the § 1983 Claim

■ According to Neiman, Neiman's claim under 42 U.S.C. § 1983 is based upon 1) the alleged violation of his right to equal protection under the law, 2) the violation of the National Labor Relations Act ("NLRA"), and 3) the violation of the federal Medicaid laws. Neiman asserts merely "on information and belief" that all the parties "conspired" in the violation of his federal rights and thus Neiman's § 1983

counterclaim exists against Local 144 to the extent that M & O are agents of Local 144 and to the extent that Local 144 or M & O on behalf of Local 144 conspired against Neiman. Because an allegation of conspiracy does not state a separate cause of action, Neiman's § 1983 counterclaim against Local 144 is only valid to the extent the underlying conduct actually states a cause of action. *See Construction Technology, Inc. v. Lockformer Co.*, 704 F.Supp. 1212, 1229 (S.D.N.Y.1989). Whether Neiman has pled adequately a conspiracy and whether Neiman's § 1983 counterclaim actually succeeds in stating a cause of action on any of the three premises he alleges as violations of his rights need not be addressed because, even if Neiman could overcome these contested obstacles, the statute of limitations bars his § 1983 claim on all grounds Neiman asserts.

Contrary to Neiman's contention that the court should look to CPLR § 213(8) and 203(f) to determine the appropriate statute of limitation to be applied in this action, the Second Circuit has held that the three-year limitations period of CPLR § 214(2) is the controlling statute of limitations under New York Law for all actions commenced under § 1983. *Pauk v. Board of Trustees*, 654 F.2d 856, 866 (2d Cir.1981) *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); *Auletta v. Tully*, 576 F.Supp. 191 (N.D.N.Y.1983) (Miner, J.) ("It is beyond cavil that ... this Court must apply the three year limitations period provided by N.Y.Civ.Prac.Law and Rules § 214(2)" (footnote and citation omitted)), *aff'd*, 732 F.2d 142 (2d Cir.1984). *See also Wilson v. Garcia*, 471 U.S. 261, 275, 105 S.Ct. 1938, 1946, 85 L.Ed.2d 254 (1985) (holding that in interest of uniformity and certainty, federal courts should adopt the most appropriate state statute of limitations and apply it to all § 1983 claims).

■ Although state law determines the three-year period of limitation, federal law determines when the claim accrues. *Keating v. Carey*, 706 F.2d 377, 382 (2d Cir.1983) (citations omitted). Under federal law, the point of accrual is when the plaintiff knows or has reason to know the injury

which is the basis of the cause of action. *Id.; Auletta v. Tully,* 576 F.Supp. at 195.

■ The NLRA premised § 1983 counterclaim is based on Neiman's allegations that M & O and A & G:

> made substantial repeated promises, assurances and representations to Neiman for his influencing of CNH to enter into a labor agreement with Local 144 regarding reimbursement ... of the labor parity increases for which Local 144 had been vehemently negotiating, asserting their influence directly into the bargaining process. Added to that was the specific request from Ottley and McKinney (individually and on behalf of Local 144) to Neiman to help them on behalf of Local 144 negotiate and complete the collective bargaining contract with CNH based directly upon these representations. The combined pressure from all sides led Neiman to assist McKinney and Ottley in negotiating with CNH, which in turn led to the execution of the 1981 collective bargaining contract between Local 144 and CNH, eventually giving rise to this action by Local 144 against Neiman for the parity increases that the State failed to provide.... Ottley's, McKinney's, Axelrod's and Gormley's intentional improper *interference* with and disruption of the negotiations and relations between the parties to the collective bargaining agreement, through action taken under color of law, violated the rights of CNH and Neiman and Concourse implicitly granted to them under the N.L.R.A.

Even should this claim withstand an examination under current case law, it should have been raised within three years after Neiman knew of his failure to pay parity pursuant to the 1981 Agreement, based upon the failure of the counterclaim defendants to perform on their representations. CNH failed to pay the first raise and in 1981 it was certainly apparent to Neiman, whether or not he was a party in the prior actions, by 1982 and 1983 during the arbitration, that the injuries arose about which he now counterclaims.

■ Similarly, to the extent Neiman's § 1983 claim is premised on Local 144's "conspiratorial role" in the State's processing of Concourse's Medicaid reimbursement appeals, Neiman was aware of the State's "aberrant" methodology in 1983 when he lodged a formal objection to the method. *See* Third-party Complaint ¶¶ 98–101. *See also Auletta v. Tully,* 576 F.Supp. 191, 195 (1983) (plaintiffs aware enough to bring administrative proceedings are aware of injuries giving rise to the federal action as well). Accordingly, a § 1983 claim premised on the processing of the appeals should have been brought prior to 1986. Therefore, to the extent that a § 1983 claim based upon the violation of Neiman's right to equal protection or the violation of the federal Medicaid laws would be cognizable under the current case law, the claim is several years stale.

■ Neiman's only defense to the statute of limitations is his assertion that the statute has "not begun to run" ... "because Local 144 has forced him into litigation on matters directly related to these [parity] appeals, together with the fact that exhaustion of his administrative remedies is not a prerequisite to maintaining this § 1983 claim." It is precisely because exhaustion of Neiman's claim is not a prerequisite to maintaining a § 1983 claim that Neiman's claims are barred. State law controls tolling as well as the relevant statute of limitations. *Hardin v. Straub,* —— U.S. ——, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989).

■ According to New York law, there is no tolling of the statute of limitations during the pendency of administrative proceedings. *Auletta,* 576 F.Supp. at 196 (citing *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) and N.Y.Civ.Prac.Law and Rules §§ 204–210). *See also Board of Regents v. Tomanio,* 446 U.S. 478, 483–86, 100 S.Ct. 1790, 1794–96, 64 L.Ed.2d 440 (1980), *diverged from on other grounds Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (federal courts in New York obligated to apply New York rule for tolling New York statute of limitations and

New York rule does not provide for tolling while litigant pursues related but independent cause of action). Neiman has failed to allege any provision under New York law which could toll the three-year statute of limitations, primarily because it is undisputed that other pending actions will not toll the statute.

▮ Finally, Neiman's unsupported assertion that the statute has not begun to run because the claims under § 1983 are ongoing or that all of the alleged damages have yet to accrue has been flatly rejected by the Second Circuit:

> The crucial time for accrual purposes is when the [third-party] plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action. To permit [plaintiff] to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable [plaintiff] to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims.

*Singleton v. New York,* 632 F.2d 185, 192 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). Because it is the wrongful act, not the existence of the conspiracy that triggers an actionable claim, "the existence of a conspiracy does not postpone the accrual...." *Id.*

Here Neiman admits his knowledge of the alleged interference and improper calculations well over a half dozen years before the bringing of his § 1983 claims. Whether or not Neiman knew of an alleged conspiracy in which Local 144 played a role is immaterial.

▮ Moreover, the facts as Neiman presents them controvert any assertion that Neiman was unaware of these alleged violations of his federal rights. Accordingly, he is barred from asserting that he was unable to recognize his injury or that it did not accrue until the termination of the alleged ongoing conspiracy. *See id.* at 192–93. *Jones v. Coughlin,* 665 F.Supp. 1040, 1045 (S.D.N.Y.1987); *see also Scherer v. Balkema,* 840 F.2d 437, 439 (7th Cir.1989)

(citing several circuits' rejection of this theory and following *Singleton* ).

### B. Neiman's Fraud and Contract Claims Fail

#### 1. No Claim for Breach of Contract is Pled Against Local 144

Neiman has pled a claim in the third-party complaint against A & G for specific performance of a contractual obligation but no cause of action appears to have been asserted against Local 144. The October 6, 1989 agreement alleged in the second cause of action is alleged to run only between Neiman and the State. Local 144 is not alleged to be a party to this agreement nor has Neiman alleged any breach by Local 144 through M & O. Neither Neiman's brief nor reply letter clarifies what the counterclaim is against Local 144 or how Local 144 is implicated by the alleged actions of A & G.

#### 2. Neiman Has Failed to Plead Adequately a Fraud Claim

▮ Neiman's third claim alleges that Local 144 and M & O "had knowledge of the representations made to Neiman and Concourse that Neiman and Concourse would not be hurt financially if CNH signed the contract with Local 144 and that the method of reimbursement to be used would be similar to the method previously utilized by the State." Neiman further alleges that M & O made representations known to be false and that M & O knew Neiman would rely on these representations.

Federal Rule of Civil Procedure 9(b) provides in pertinent part that: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Neiman asserts that 9(b) requires him to set forth only the "circumstances" constituting the fraud and that 9(b) should be read in conjunction with Federal Rule 8(f) allowing liberal construction of the pleadings.

▮ However, the justifications for requiring fraud to be pled in particularity are fourfold:

The first and most obvious purpose of the rule is to ensure that [plaintiffs] have sufficient information concerning the conduct with which they are charged to frame a responsive [reply]. The rule also serves to protect [plaintiffs] from the harm that comes to their reputations and to their good will when they are charged with serious wrongdoing by providing a means for dismissing such charges when they are not adequately grounded.... Finally, the rule prevents waste of the Court's time with groundless claims.

*Deutsch v. Flannery,* 597 F.Supp. 917, 920 (S.D.N.Y.1984) (citations omitted). Accordingly, the rule in this circuit is that allegations which do not identify the "time, place, speaker or content of the allegedly fraudulent statements" will not satisfy the particularity requirement of Rule 9(b). *Official Publications, Inc. v. Kable News Co.,* 692 F.Supp. 239, 245 (S.D.N.Y.1988), *aff'd in part* and *rev'd on other grounds,* 884 F.2d 664 (2d Cir.1989) (citations omitted).

The only purported basis for liability asserted against Local 144 is that M & O had knowledge of fraudulent representations that injured CNH, not Neiman. On the basis of these allegations, the court cannot decipher if a valid claim is stated against Local 144 and whether the claim would survive the relevant statute of limitations.

Conclusion

For the foregoing reasons, the motion is granted in part and the cross-motion is denied. Any repleading of the contract and fraud claims against Local 144 will be completed within ten (10) days. Discovery will be completed within thirty (30) days and the pretrial order filed on July 5. Submit order on notice.

It is so ordered.