Thomas A. GLEASON, Plaintiff,

v.

William McBRIDE, Phillip Zegarelli, John Jandrucko, Richard Spota, The Village of North Tarrytown, Paul Ranieri, Vincent Buonanno, John Malandrino, Thomas Cavalieri, James Timmings, Robert Ponzini, James Whalen, William Booth, Defendants.

Nos. 81 Civ. 7400(LLS), 84 Civ. 3339(LLS).

United States District Court, S.D. New York.

April 22, 1988.

**60**

Chapman, Moran, Hubbard & Zimmermann, Stamford, Conn. (John Haven Chapman, Brian E. Moran, of counsel), for plaintiff.

Anderson Russell Kill & Olick, P.C., New York City (Robert A. Gaynor, Anthony Princi, of counsel), for John Jandrucko, Richard Spota, Robert Ponzini, James Whalen and William Booth.

Jacobson & Schwartz, Rockville Centre, N.Y. (Paul Goodovitch, of counsel), for Village of North Tarrytown, William McBride, Phillip Zegarelli, Paul Ranieri, Vincent Buonanno, John Malandrino, Thomas Cavalieri and James Timmings.

## OPINION AND ORDER

STANTON, District Judge.

Plaintiff Thomas Gleason sues the Village of North Tarrytown and several Village officials, claiming that they conspired to and did violate his rights under the United States Constitution and the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985. He also claims that the defendants committed various state common law torts against him. Gleason moves to amend the complaint. The defendants have made two separate motions for summary judgment. Gleason's motion to amend is granted and the complaint, as amended, is dismissed.

## FACTS

Mr. Gleason lived in the Tarrytown, New York, area for over twenty years. He was active in local community affairs and was often critical of local government officials. He wrote letters to the editor of the local newspaper and attended meetings of the Village Board of Trustees. In addition, he wrote to various state and federal agencies about alleged improprieties and violations of the law by village officials.

The defendants are present and former officials and employees of the Village of North Tarrytown. William McBride is the former Mayor of North Tarrytown and a former Village Trustee. Phillip Zegarelli is the Mayor of North Tarrytown and a former Village Trustee. Paul Ranieri, Vincent Buonanno, John Malandrino, Thomas Cavalieri and James Timmings are all present or former Village Trustees. Robert Ponzini is the Village Attorney for North Tarrytown and the former Village Prosecutor. John Jandrucko is the former North Tarrytown Chief of Police and Richard Spota is the current North Tarrytown Police Chief. James Whalen and William Booth are North Tarrytown police officers.

In March 1977, Gleason ran as a write-in candidate for Mayor. He received fifty-one votes. Gleason complained to the New York State Board of Elections about alleged election improprieties.

In January 1978, Gleason was hired by the Eastchester Savings Bank as Assistant to the President. In August 1978, the bank received an anonymous letter criticizing Mr. Gleason and enclosing a newspaper article reporting that he had been convicted of failing to pay parking fines. The bank received a second anonymous letter in October 1978, again criticizing Mr. Gleason and enclosing a newspaper article that reported that he had been threatened with eviction from a Village Board of Trustees meeting. Gleason claims that the anonymous letters were written by Police Chief

Spota in collaboration with Mayor Zegarelli. The Eastchester Savings Bank fired Mr. Gleason on October 10, 1978. The President of the bank testified at his deposition that the letters did not influence his decision to fire Mr. Gleason.

On November 27, 1978, during a public meeting of the North Tarrytown Village Board of Trustees, Gleason was arrested and charged with disturbing the peace of a village meeting, disorderly conduct and harassment. Gleason claims that he attended the meeting to help an elderly neighbor present a complaint about noise control. During Gleason's presentation of his complaint, Mayor McBride asked him to leave the meeting. Gleason refused to leave. Defendants McBride, Zegarelli, Ranieri, Buonanno, Malandrino, Cavalieri and Timmings voted to have him arrested.

Gleason claims that, prior to the public meeting, the Mayor and the Board members met privately at a restaurant owned by one of the Trustees. He claims that they were overheard to say "We're ready for Gleason tonight" and "We're going to get him."

Gleason was tried on the basis of an information filed by Mayor McBride in February 1979. Gleason was represented by counsel. He made a motion to change venue that was granted. He was convicted of disorderly conduct after a bench trial on November 29, 1979 and fined $250. The charges of disturbing the peace of a village meeting and harassment were dismissed. Gleason did not appeal the conviction.

In September 1979, Gleason was working for the North Tarrytown Board of Education. Defendant Zegarelli sent a letter on official Village stationery to the Board criticizing Gleason.

In January 1979, police officer Spota saw an artist's sketch and physical description of a suspect in a Nassau County bank robbery that was being circulated in Westchester County by the Nassau County police. Spota contacted the Nassau County police to report that Gleason matched the description. Nassau County police officers met with defendants Spota and Jandrucko and other Village police officers. After the meeting, they took surveillance photographs of Gleason which they showed to eyewitnesses in a photopack.

In February 1979, Nassau police returned to North Tarrytown, met with Spota and proceeded to Mr. Gleason's home. They took him to the Nassau County Robbery Squad office, placed him in a line-up and gave him a polygraph examination. He was held for seven hours and released. No charges were ever brought against him, and no warrant was issued for his arrest.

On March 19, 1980, Gleason was arrested and charged with harassing Mayor McBride. Gleason was again represented by counsel. He was convicted, and on July 3, 1980 he was sentenced to either paying a $250 fine or sweeping the sidewalk in front of each church in the Village on six consecutive Sunday mornings. No appeal from this conviction was ever perfected.

On May 17, 1981, Christine Fiala filed a complaint charging Gleason with harassing her son Lanning, who was a minor. The Fialas claimed that Gleason was verbally abusive and spat at Lanning. Gleason was arrested on the basis of the complaint without an arrest warrant being issued. Gleason was once again represented by counsel. He made a motion for a change of venue that was denied by the Village Justice and by the County Court. On December 3, 1981 he was convicted after a bench trial and fined $75. He filed a notice of appeal but never perfected the appeal.

In late 1981, the owners of the Van Tassel Apartments, where Gleason had lived for over twenty years, brought an action to evict him. They alleged that he had breached his lease by keeping a dog in his apartment. An order of eviction was issued on December 1, 1981. Gleason's appeal of the order was dismissed on April 28, 1982.

PROCEDURAL HISTORY

Mr. Gleason filed his first federal action on November 27, 1981 ("Gleason I"). The Gleason I complaint sought damages for violations of his civil rights in connection with his arrest and conviction after the

Village Board Meeting. The Gleason I complaint named as defendants Mayor McBride, Trustees Ranieri, Buonanno, Zegarelli, Malandrino, Cavalieri and Timmings, Village Attorney Ponzini, Officer Jandrucko, and the Village of North Tarrytown, along with several other defendants who have since been dismissed from the action. The original complaint was never served on the defendants. Judge Duffy placed the action on the suspense calendar on May 5, 1982 because no proof of service had been filed. On November 29, 1982 Gleason filed an amended complaint. The amended complaint was not served on the defendants until September 1985.

Gleason filed his second action on January 29, 1982 ("Gleason II"). The Gleason II complaint sought damages for violations of his constitutional and civil rights in connection with his arrest for the Nassau County bank robbery. The complaint named the Village of North Tarrytown, Police Chief Spota and Officer Jandrucko. It was served on September 7, 1982. Gleason II was discontinued with prejudice by a stipulation and order dated July 18, 1984. Judge Leval denied Gleason's motion to vacate the stipulation on January 9, 1987, and dismissed his further action to reopen the action on October 9, 1987.

Gleason filed his third action on May 11, 1984 ("Gleason III"). The Gleason III complaint named Chief Spota, officers Whalen and Booth and the Village of North Tarrytown as defendants. The complaint charged that they had violated Gleason's civil rights in connection with the Fiala harassment incident.

Gleason I and Gleason III were consolidated and a Consolidated Amended Complaint was filed on March 10, 1986. Gleason's proposed Second Consolidated and Amended Complaint contains eight counts. Count I alleges violations of Gleason's rights under the first, fourth, fifth, sixth, ninth, tenth and fourteenth amendments to the United States Constitution. Specifically, Gleason alleges that his rights to free speech, freedom of assembly, freedom from arrest without probable cause, privacy, equal protection of the laws, due pro-

cess of law, employment of choice free from government stigma, freedom from warrantless arrests, counsel, fair and impartial trial of civil claims, access to the courts and to his day in court have been violated by the defendants. Count II alleges that the defendants conspired to violate the civil rights laws, 42 U.S.C. §§ 1983 and 1985, and that they engaged in a cover-up of the civil rights violations. Count III alleges tortious interference with contract and employment. Count IV alleges tortious interference with Gleason's career and prospective economic advantage and due process violations. Count V alleges intentional infliction of emotional distress. Count VI alleges violations of Gleason's right to privacy. Count VII alleges prima facie tort. Count VIII alleges libel per se. In addition, Gleason alleges that there was fraudulent concealment of the facts with regard to the anonymous mail sent to his employer.

## DISCUSSION

### I. Amendment of the Complaint

Rule 15(a) of the Fed.R.Civ.P. states that leave to amend a pleading "shall be freely given when justice so requires." Therefore, Gleason's motion to amend the complaint is granted.

### II. Constitutional Claims

■ In Count I of his Second Consolidated and Amended Complaint, Gleason seeks monetary damages from the defendants for violations of his constitutional rights. A direct action for damages for a deprivation of constitutional rights was first allowed in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). However, a *Bivens* action for direct relief under the constitution may be maintained only where no other "equally effective or adequate" remedy exists. *Carlson v. Green*, 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980). The availability of a § 1983 action precludes an action for direct relief under the constitution. *Turpin v. Mailet*, 591 F.2d 426, 427 (2d Cir. 1979); *Williams v. Bennett*, 689 F.2d 1370,

1390 (11th Cir.1982), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983); *Tarpley v. Greene,* 684 F.2d 1, 10–11 (D.C. Cir.1982); *Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir.1981).

All of the claims that Gleason raises in Count I can be, and have been, pleaded as violations of 42 U.S.C. § 1983. Therefore, Count I is dismissed in its entirety. In addition, Count IV charges that the defendants' actions interfered with his constitutional right not to be punished by governmental action without due process of law. This claim is also dismissed.

## III. Civil Rights Claims

### A. Section 1985

Gleason alleges that the defendants have engaged in a conspiracy to deprive him of his civil rights. 42 U.S.C. § 1985(2) provides a right of action

> if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

Gleason also relies on 42 U.S.C. § 1985(3), which provides that a right of action accrues

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.

These two subsections allow a right of action only when the defendants intend to injure the plaintiff because he is a member of a group which Congress intended to protect, and not because of any personal animosity against him. *United Brotherhood of Carpenters and Joiners v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge,* 403

U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Keating v. Carey,* 706 F.2d 377, 385–86 (2d Cir.1983). "The intended victims must be victims not because of any personal malice the conspirators have toward them, but because of their membership in or affiliation with a particular class." *Scott,* 463 U.S. at 850, 103 S.Ct. at 3367. The Second Circuit has held that political parties are protected groups within the meaning of § 1985. *Keating,* 706 F.2d at 388.

Mr. Gleason has not sustained his burden of showing that he is a member of a protected group and that the conspiracy that he alleges was directed against him as a member of such a group. Mr. Gleason identifies himself as "an Independent in Village politics." Although he ran as a write-in candidate for mayor, he does not allege that he is a member of any organized political group. Therefore, Gleason's § 1985 claim is dismissed pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.

### B. Section 1983

#### 1. Statute of Limitations

Section 1983 claims must be commenced within the state limitations period for personal injury actions. 42 U.S.C. § 1988; *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985). New York has a three year limitations period for personal injury actions, N.Y.C.P.L.R. § 214(5), which applies to civil rights actions that accrued in New York. *Okure v. Owens,* 816 F.2d 45 (2d Cir.1987).

A § 1983 claim accrues at the time the plaintiff knew or should have known of the injury which is the basis of the action. *Pauk v. Board of Trustees of City University of New York,* 654 F.2d 856, 859 (2d Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *Kaiser v. Cahn,* 510 F.2d 282, 285 (2d Cir. 1974). In a § 1983 action involving separate wrongful acts, each claim must be analyzed separately to determine when it

accrued and when the limitations period ran. *Singleton*, 632 F.2d at 192; *Rodrigues v. Village of Larchmont*, 608 F.Supp. 467, 477 (S.D.N.Y.1985).

 The running of the statute of limitations is not tolled by the existence of a conspiracy to deprive a plaintiff of his civil rights that continued after the expiration of the limitations periods on the individual claims. "To permit him to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims." *Singleton*, 632 F.2d at 192; *Rodrigues*, 608 F.Supp. 477.

### a. Gleason's Campaign for Mayor

 Gleason ran for Mayor in 1977. Any claim he has based on election improprieties accrued in 1977, and was time-barred when Gleason filed his first complaint in 1981.

### b. The Village Board Meeting Arrest

 The Gleason I complaint was filed on November 27, 1981. It alleged civil rights violations arising out of his arrest at the Village Board Meeting on November 27, 1978. Under Fed.R.Civ.P. 3, the action was commenced at the time of filing, which was the last day of the three year limitations period. Any claims arising out of the Village Board arrest would thus appear to be timely against defendants McBride, Ranieri, Buonanno, Zegarelli, Malandrino, Cavalieri, Timmings, Ponzini, Jandrucko and the Village of North Tarrytown, who were named in the original complaint. However, although the action is commenced upon filing, delay in service of the summons and complaint may nullify the effect of filing the complaint.[1] *Application of Royal Bank of Canada*, 33 F.R.D. 296, 299 (S.D. N.Y. 1963); *L.G. DeFelice & Son, Inc. v. Globe Indemnity Co.*, 23 F.R.D. 275, 278

(S.D.N.Y.1959); *Netter v. Ashland Paper Mills, Inc.*, 19 F.R.D. 529, 531 (S.D.N.Y. 1956).

Gleason's claims arising out of his arrest at the Village Board Meeting are untimely because he did not use due diligence in serving the defendants. The original Gleason I complaint, which was filed on November 27, 1981, was never served on any of the defendants. Gleason filed an amended complaint on November 29, 1982. The amended complaint was served on the defendants on September 16, 1985, nearly seven years after the wrongful acts complained of. Gleason's claims arising from his arrest at the Village Board Meeting are, therefore, dismissed as untimely.

### c. Zegarelli's Letter to the Board of Education, Harassment of Mayor McBride, Harassment of Lanning Fiala and Eviction

Gleason first raised claims in connection with the letter sent to the Board of Education by Mayor Zegarelli, his convictions for harassing Mayor McBride and Lanning Fiala and his eviction from his apartment in his Consolidated Amended Complaint, which was filed on March 10, 1986. Gleason's claim in connection with the Zegarelli letter accrued in 1979. Although Gleason claims that the defendants engaged in fraudulent concealment of the anonymous letters sent to the Eastchester Savings Bank, Mayor Zegarelli's identity as the author of the letter to the Board of Education was never concealed. Gleason's claim in connection with his conviction for harassing Mayor McBride accrued no later than July 3, 1980, the day he was sentenced on the McBride harassment charge. His claim in connection with his conviction for harassing Lanning Fiala accrued no later than December 3, 1981, the date that he was convicted of the Fiala harassment charge. His claim in connection with the eviction accrued no later than December 1, 1981, the date of the order of eviction. Since none of these claims were raised within the

---

1. The current version of Fed.R.Civ.P. 4(j) allows a court to dismiss an action if the summons and complaint is not served within 120 days of filing. This amendment did not become effective until February 26, 1983, after the Gleason I complaint was filed. However, prior to the passage of Rule 4(j), the courts applied a "due diligence" standard to the service of the complaint. *See* 4A C. Wright & A. Miller, *Federal Practice and Procedure*, 390–91 (2d ed. 1987).

three year statute of limitations, they are time-barred as a basis for § 1983 liability.

### 2. Color of State Law

■ Gleason alleges that defendants Spota and Zegarelli were responsible for the anonymous letters received by his employer, the Eastchester Savings Bank. However, anonymous letters cannot be the basis of § 1983 liability. A defendant must have acted under color of state law for there to be liability under § 1983. Section 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The color of state law requirement is satisfied only when the defendant has misused his position to deprive the plaintiff of his civil rights. In other words, "the 'color of state law' inquiry centers on whether a person who is affiliated with a state government or its political subdivision has used his position to deprive another of his constitutional rights." *Colon v. Lomelo,* 575 F.Supp. 664, 667 (S.D.Fla.1983).

Assuming for purposes of this motion that Spota and Zegarelli were responsible for the anonymous letters, the fact that they were sent anonymously precludes a finding that they were acting under color of state law at the time they sent the letters. Therefore, Gleason's § 1983 claim based on the anonymous letters is dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.

### 3. Res Judicata

The only remaining claims that Gleason raises under § 1983 are his claims in connection with his arrest for the Nassau County bank robbery. These claims were the subject of the Gleason II complaint, which was discontinued with prejudice by a stipulation and order dated July 18, 1984. Judge Leval denied motions to vacate the stipulation and to reopen the action. Therefore, under principles of res judicata, the bank robbery arrest cannot be the basis for § 1983 liability in this action. *See, e.g., N.L.R.B. v. United Technologies Corp.,* 706 F.2d 1254, 1259 (2d Cir.1983).

All of Gleason's claims under § 1983 are barred by the statute of limitations, res judicata, or the requirement that the actions were done under the color of state law. Therefore, Count II of the Second Consolidated and Amended Complaint is denied in its entirety.

### IV. State Law Claims

The remaining counts in the Second Consolidated and Amended Complaint allege state law intentional torts. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343. Since all of the federal claims have been dismissed, the pendent state law claims must be dismissed since no independent basis of subject matter jurisdiction over them is alleged. *Abrams v. Carrier Corp.,* 434 F.2d 1234 (2d Cir.1970), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971); *see also United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### CONCLUSION

Gleason is given leave to file the Second Consolidated and Amended Complaint. As amended, the complaint is dismissed under Fed.R.Civ.P. 12(b) for failure to file within the statute of limitations, for failure to state a claim upon which relief may be granted, and for lack of subject matter jurisdiction.