Norman E. BLANKMAN,
et al., Plaintiffs,

v.

COUNTY OF NASSAU,
et al., Defendants.

No. CV 91–3929.

United States District Court,
E.D. New York.

April 21, 1993.

Reilly, Like, Tenety & Ambrosino by Irving Like, Babylon, NY, Vladeck, Waldman, Elias & Engelhard by Julian R. Birnbaum, New York City, Flower & Medalie, Bay Shore, NY, for plaintiffs.

Snitow & Pauley by William H. Pauley, III, New York City, for defendants County of Nassau, Board of Supervisors of County of Nassau, Mondello and Peterson.

O'Connor, O'Connor, Hintz & Deveney by Christine M. Capitolo, East Rockaway, NY, for defendant Suozzi.

Schoeman, Marsh & Updike by Norman L. Greene, New York City, for defendant Nassau County Planning Com.

Hodgson, Russ, Andrews, Woods & Goodyear by Deborah L. Kelly, Albany, NY, for defendant Coliseum Hotel Assoc.

J. Russell Clune, P.C. by Ronald J. Morelli, Mineola, NY, for defendant Seldin.

Jaspan, Ginsberg, Ehrlich, Schlesinger, Silverman and Hoffman by Joseph Jaspan, Garden City, NY, for defendants Town of Hempstead, Town Board, Town of Hempstead, Mondello, Peterson and Weisbein.

Mulholland, Minion & Rose by Paul M. Duffy, Williston Park, NY, for defendant Parente.

Hopkins, Kopilow & Hopkins by Michael T. Hopkins, Garden City, NY, for defendant Smith.

Carol A. Burns & Associates, Mineola, NY, for defendant D'Amato.

Kopff, Nardelli & Dopf by Martin B. Adams, New York City, for defendant Tully.

Young, Symons, Rinear & Gelfand by Leonard B. Symons, Massapequa, NY, for defendant Komanoff.

Montfort, Healy, McGuire & Salley by James F. Keefe, Jr., Garden City, NY, for defendant Bennett.

Cohn & Goldstein, P.C. by Irving A. Cohn, Woodbury, NY, for defendant Colby.

Alan J. Reardon, Syosset, NY, for defendant Kiernan.

Paul F. Corcoran, Oyster Bay, NY, for defendant Gulotta.

LeBoeuf, Lamb, Leiby & MacRae by Thomas Fenerty, New York City, for defendant Nassau County Indus. Development Agency.

Bee & Eisman by Peter A. Bee, Mineola, NY, for defendant Purcell.

Hammill, O'Brien, Croutier & Dempsey by Anton Piotroski, Mineola, NY, for defendant Mohr.

John W. Palmer, Mineola, NY, for defendant Cacciatore.

Corbin, Silverman & Sanseverino by John J. Gallagher, New York City, for defendant Coliseum Hotel Assoc.

Blutrich, Falcone & Miller, New York City, for defendant Mitchel Oak Street Assoc.

Block, Amelkin & Hamburger, Smithtown, NY, for defendants Reckson Associates and HMCC Associates.

WEXLER, District Judge.

Norman E. Blankman ("Blankman"), Milton Gaskill ("Gaskill"), James D. Broach ("Broach"), Vincent F. Cioci ("Cioci"), Nassau/Suffolk Neighborhood Network, Inc. ("NSNN") and Taxpayers to Reclaim Mitchel Field ("TRMF") (collectively, "plaintiffs") bring this action under 42 U.S.C. §§ 1983 and 1985 and state law theories including fraud, unconstitutional gift of public property and "common law riparian principles" against the County of Nassau, the Nassau County Industrial Development Agency, the Board of Supervisors of the County of Nassau, John B. Kiernan, Joseph Mondello, Gregory Peterson, James Bennett, Joseph Colby, Hannah Komanoff, Bruce Nyman, Alan Parente, Michael Tully, Alphonse D'Amato and Vincent Suozzi as members of the Nassau County Board of Supervisors, Francis Purcell, as

Nassau County Executive ("Nassau County Defendants"); Joseph Margiotta, as Chairman of the Nassau County Republican Committee; Abe Seldin as the Chairman of the Nassau County Board of Assessors; the Town of Hempstead, the Town Board of the Town of Hempstead, the Town of Hempstead Industrial Development Agency ("THIDA"), Thomas Gulotta and Joseph Mondello as Town of Hempstead Presiding Supervisors, Gregory Peterson as Town of Hempstead Supervisor, Eugene Weisbein as a Town of Hempstead Councilman and Kurt Mohr as Town of Hempstead Commissioner of Planning and Economic Development (the "Town Defendants"); and Coliseum Hotel Associates ("CHA"), L.B. Realty Co. and nine other Mitchel Field lessees ("lessee defendants") (collectively, "defendants").[1]

Blankman is a real estate developer who, in the late 1970's, sought the adoption of a particular comprehensive plan for the development of the area in and around Mitchel Field. Blankman now alleges that in 1979, defendant Purcell offered him an opportunity to build an office building at Mitchel Field, but only on the condition that he drop his opposition to the defendants' development plans and practices.

Gaskill and Broach are residents, taxpayers and water users of the Town of Hempstead. They allege that their water charges and property taxes have increased due to the diversion of water supply to, and the loss of tax revenue from, the Mitchel Field lessees.

NSNN is a not-for-profit corporation interested in environmental issues. Cioci is the Executive Director of NSNN. TRMF is an organization dedicated to good government, fiscal issues and the environment. Blankman and Cioci are directors of TRMF. Like Gaskill and Broach, TRMF and NSNN allege that their members have been injured by increased water charges and property taxes due to the special benefits given to the Mitchel Field lessees.

More specifically, plaintiffs allege that defendants instituted a policy of abuse of gov-

---

1. All the individual defendants are being sued in their official and individual capacities. Certain of these defendants held positions with both Nassau County and the Town of Hempstead. They are being sued in regard to both official positions.

ernmental power by taking the following actions in return for political support: (1) the giveaway of public Mitchel Field lands by "sweetheart" leases, public financings, rezonings and tax breaks; (2) the award of public contracts for the Nassau County Correctional Center ("NCCC") on a non-competitive basis; (3) the award of personal service contracts in relation to Mitchel Field and the NCCC on a non-competitive basis; and (4) the manipulation of environmental and other review procedures in connection with the Mitchel Field and NCCC developments.

Plaintiffs seek, *inter alia*, the following relief: (i) a declaration that defendants conspired to and did deprive plaintiffs of their constitutional rights under the First and Fourteenth Amendments in connection with the above-mentioned actions; (ii) the rescission of certain leases of Mitchel Field property entered into between the County of Nassau and other named defendants between 1980 and 1986; (iii) the enjoinment of further development of Mitchel Field until a comprehensive master plan and an environmental impact statement relating to Mitchel Field, Roosevelt Raceway and surrounding areas are prepared; (iv) the establishment of a proper water district for Mitchel Field; (v) the revision and reformation of Mitchel Field leases to reflect market rental rates and lease terms, including commercially reasonable rent escalator clauses; (vi) the enjoinment of further planning and construction activities at the NCCC and the Nassau County Sheriff's Farm until the contracts for such activity are awarded on a non-discriminatory basis and adequate environmental safeguards are implemented; and (vii) related compensatory and punitive damages.

Defendants move to dismiss the Amended Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure on the following grounds: (1) it fails to state a claim upon which relief can be granted; (2) the claims are barred by the applicable statute of limitations; (3) the Town and County defendants are immune from suit; (4) plaintiffs do not have any "property inter-

est" protected under § 1983; (5) plaintiff taxpayers are not a "class" capable of asserting a § 1985 claim; (6) the claims of fraud are not pled with particularity; and (7) this Court will not have supplemental jurisdiction over plaintiffs' state law claims after the § 1983 and § 1985 claims are dismissed. For the reasons stated below, defendants' motion to dismiss is granted.

## I. BACKGROUND

On November 28, 1961, the United States Department of Defense announced that it was terminating its operations at the Mitchel Field Air Force Base, located in Nassau County. Upon the official closing of the base, the land passed to the United States General Services Administration for disposal as surplus property pursuant to the provisions of the Surplus Property Act of 1944, 50 U.S.C.App. § 1622, and the Federal Property and Administrative Services Act of 1949, 40 U.S.C. § 484. Pursuant to these statutes, between 1962 and 1966 the County of Nassau purchased approximately 550 acres of Mitchel Field from the federal government for $21,243,388. Subsequently, the County expended approximately $119,000,000 in capital improvements related to that property.

Beginning in the late 1970's, apparently in response to a national and local recession, Nassau County Executive Francis Purcell, with the support of the Nassau County Board of Supervisors, determined to develop Mitchel Field as rapidly as possible. Pursuant to this plan, various developers were contacted and long-term leases were negotiated and signed. These leases, however, were immediately challenged in the state courts by opponents of the development.

On December 6, 1979, Aware, Inc. ("AWARE"), a public interest corporation of which Blankman was the president, initiated an action in Supreme Court, Nassau County, challenging two Mitchel Field leases that had been executed in August 1979.[2] AWARE asserted that the leases were "sweetheart"

---

2. One of these leases was between Nassau County and Z.I.D. Associates ("ZID"). The ZID lease was assigned to CHA in 1980. Although CHA has been named as a defendant in the instant

action, plaintiffs do not in any way allege that CHA is other than a bona fide purchaser of the ZID lease.

leases, granted for inadequate consideration and on a non-competitive basis. Like the Amended Complaint here, the 1979 Complaint: (1) named as defendants the County of Nassau, the Town of Hempstead and many of the individual defendants named in the instant action; (2) attacked the enactment of § 11–8.0 of the Nassau County Administrative Code as one means by which the alleged "conspiracy" was facilitated;[3] (3) asserted that the leases constituted an improper gift or loan of Nassau County property to a private entity; (4) challenged the environmental effects of the leases; (5) attacked zoning practices in connection with Mitchel Field development; and (6) sought equitable relief declaring the Mitchel Field leases null and void. On April 15, 1980, the action was dismissed on the merits. The court held, *inter alia*, that § 11–8.0 of the Nassau County Administrative Code had been validly enacted by the State legislature, that the County was authorized to make 99 year leases at Mitchel Field, and that the leases did not constitute a gift under the New York Constitution, Article VII, § 1. The decision was unanimously affirmed by the Appellate Division, Second Department on January 20, 1981. *Aware, Inc. v. Nassau County,* 80 A.D.2d 751, 436 N.Y.S.2d 905 (2d Dep't), *leave to appeal denied,* 53 N.Y.2d 982, 441 N.Y.S.2d 670, 424 N.E.2d 557 (Ct.App.1981).

On February 8, 1989, Nassau County District Attorney Dennis Dillon issued a *Report on the Development of Public Land at Mitchel Field Nassau County, New York* (the "Report"). Although the Report found no basis for criminal prosecution of those who directed or implemented the development of Mitchel Field, it found the following wrongdoing: (1) the development of Mitchel Field was conducted without a publicly adopted plan or policy; (2) several of the leases were let for rates far below the prevailing market rate; (3) several leases were developed without any appraisal of the property involved; (4) the leases uniformly failed to adequately compensate the County for increasing land values or inflation over the terms of the leases. This Report apparently encouraged plaintiffs to bring the instant action.

Plaintiffs served and filed the Complaint commencing this action on or about October 9, 1991. Plaintiffs allege that since 1978, defendants have maintained a policy and custom which improperly discriminates against them on the basis of their political associations and the exercise of their freedom of speech, and deprives them of due process of law by subverting the governmental process to benefit certain governmental officials and their supporters. They further allege that pursuant to such policy and custom, Mitchel Field lessees made political contributions to unnamed defendants as follows:

| Leasee | Years of Contribution | Total Amount |
| --- | --- | --- |
| Reckson Assocs. | 1982, 1984, 1987 | $3,000 |
| Coliseum Plaza Associates | 1982–1987 | 4,100 |
| Mitchell Oak Street | 1982–1987 | 6,500 |
| P.A.R. Construction | 1984–1985 | 3,400 |
| Nassau Merrick, Oak Realty, and Meadowbrook Plaza South | 1984, 1985, 1987 | 5,450 |
| Lexington Holding Corp. | 1985, 1987 | 1,700 |

*See* Am.Compl. ¶ 88

**3.** Like plaintiffs in the instant case, AWARE asserted that the approval of these leases was facilitated by defendants' "circumvention" of state law through their enactment of § 11–8.0, which granted the Nassau County Board of Supervisors the power to lease Mitchel Field property without the competitive bidding required by N.Y. County Law § 215, subdiv. 6. Plaintiffs now maintain that the Mitchel Field leases violate County Law § 215 because the County failed to determine that Mitchel Field was not needed for public use as required by § 215, subd. 4. Section 11–8.0 provides:

**Authority to dispose of real property.** The county may sell ... any of its real property ... or lease such property for a period not to exceed ninety-nine years at public or private sale ... for such consideration and upon such terms and conditions as the board of supervisors may deem proper....

In return for the above-mentioned political contributions, these lessees allegedly received: (i) leases of up to 99 years, without competitive bidding, at substantially below fair market rents, and without any rent escalation provisions; (ii) rezoning of the Mitchel Field property from residential to commercial use; (iii) exemptions from certain real property taxation; and (iv) tax exempt financing arranged by the County of Nassau and the Town of Hempstead Industrial Development Agencies.

All the leases at issue were executed prior to 1987.[4] However, in an apparent attempt to avoid the statute of limitations bar, the Amended Complaint also contains allegations concerning activities of certain defendants and non-parties subsequent to October 1988.

Plaintiffs allege that certain companies, including the lessee defendants, which made political contributions to unnamed Town and County defendants improperly received benefits related to the regulation of the amount and condition of water resources and infrastructure needed for the commercial development of the Mitchel Field and NCCC properties. Other such companies improperly received public contracts for the planning and construction of the NCCC.

Specifically, plaintiffs allege that in November 1989, defendants CHA and THIDA executed lease agreements relating to hotel additions and renovations to be financed by THIDA bonds. Plaintiffs also allege that in 1991, in order to preserve defendant L.B. Realty's Mitchel Field lease, defendant Mondello invited L.B. Realty to propose a development for senior citizen housing for that land, and that in January 1992, Mondello attempted to get Hempstead Town Board approval for L.B. Realty's proposal.

In addition, plaintiffs allege that between 1985 and 1992, Sidney Bowne & Sons and Talcon Management, Inc., both non-parties to this action, received personal service contracts from the County without public bidding and without approval by the County Board of Supervisors.[5] Furthermore, plaintiffs allege that non-parties DeMatteis Construction and Perini Sea Crest made political contributions to unnamed defendants after receiving NCCC construction contracts. Plaintiffs allege that these companies' political contributions were as follows:

4. The leases were executed at the following times:

| Leasee | Date of Lease |
| --- | --- |
| Coliseum Hotel Assocs. | August 19, 1980 |
| P.A.R. Construction | February 24, 1981 |
| Parawon Realty | February 24, 1981 |
| Coliseum Plaza Assocs. | April 28, 1981 |
| Reckson Assocs. | July 28, 1981 |
| Nassau Merrick Ave. Realty | January 26, 1982 |
| Rolin Realty | December 21, 1982 |
| Lexington Holding Co. | January 24, 1983 |
| Webcor | August 22, 1983 |
| Avon Park Management | October 18, 1983 |
| Atria Associates | March 1, 1984 |
| Oak Realty | September 25, 1984 |
| DiFazio Electric | March 26, 1985 |
| Meadowbrook Plaza South | March 26, 1985 |
| L.B. Realty | August 19, 1985 |
| Mitchel Oak Street Assocs. | January 27, 1986 |
| Carchietta Realty | April 9, 1986 |

5. In addition, plaintiffs allege that non-parties Angelo Corva & Assocs. and Donovan's Armed Guard Service, Inc. also received such contracts and that in 1989–1990, Angelo Corva & Assocs. made political contributions of at least $9,500 to unnamed defendants. Plaintiffs do not allege when these contracts were executed.

| Company | Years of Contributions | Total Amount |
|---------|------------------------|--------------|
| Sidney Bowne & Sons | 1988–1990 | $18,070 |
| DeMatteis Construction | 1988–1989 | 2,000 |
| Perini Sea Crest | 1988–1991 | 5,400 |

## II. DISCUSSION

### A. *Plaintiffs Fail to Assert a Property Right Under § 1983*

■■■ Where defendants in a § 1983 action are allegedly engaged in "egregious and politically-influenced procedural irregularities, the threshold question is whether" the interest involved is "one entitled to protection and enforcement by a federal court." *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 58 (2d Cir.1985) (affirming dismissal of § 1983 action where plaintiff was not entitled to a ZBA certificate as a matter of right). Under § 1983, a plaintiff must allege deprivation of a property or liberty interest secured under the Constitution or the laws of the United States by persons acting under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). To have a property interest in a government benefit, "a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead have a *legitimate claim of entitlement to it.*" *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (emphasis added). *Accord Walentas v. Lipper,* 862 F.2d 414, 418 (2d Cir.1988), *cert. denied,* 490 U.S. 1021, 109 S.Ct. 1747, 104 L.Ed.2d 183 (1989).

Entitlement to a benefit is not created by the Constitution but by " 'existing rules or understanding from an independent source such as state law....' " *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709). Thus, the state defines when and if a property right vests. "[I]f state law makes the pertinent official action discretionary, one's interest in a favorable decision does not rise to the level of a property right entitled to procedural due process protection." *RR Village Ass'n v. Denver Sewer Corp.,* 826 F.2d 1197, 1201–02 (2d Cir.1987); *see Sulli-van v. Town of Salem,* 805 F.2d 81, 84 (2d Cir.1986) (in § 1983 action, developer had no property interest in the Town's acceptance of his road as a public highway as such acceptance by the Town was discretionary).

In *Walentas,* the Second Circuit dismissed a developer's § 1983 action because he did not have a cognizable property interest in developing city property even though he (i) had been conditionally designated as developer of various city owned properties; (ii) had been granted the exclusive right to negotiate and execute a memorandum of intent to be named the final developer; (iii) had obtained approval of his application for $20,000,000 in financial assistance; (iv) had submitted a draft Uniform Land Use Review Program Application; (v) had submitted an application for tax reductions totalling $12 million; (vi) had reached an agreement with several municipal development corporations on the budget; (vii) had applied for a low-interest loan to finance an automobile parking garage; and (viii) had obtained a conditional lease for one of the properties developed. *Walentas,* 862 F.2d at 416.

In contrast, the only "property interest" alleged in the instant case is that Blankman was asked, fourteen years ago, if he would like to build an office building at Mitchel Field. No other plaintiff is alleged to have expressed an interest in the Mitchel Field leases. Moreover, no plaintiff is alleged to have expressed an interest in the personal service contracts or leases that were executed after October 1988.

Plaintiffs argue that as citizens and taxpayers, they have "property interests" in the use and enjoyment of County-owned open spaces and water resources and may therefore assert a § 1983 action because an impermissible bias or political animus affecting such space or water resources is alleged. This position, however, is unsupported by authority. Indeed, all the cases cited by plaintiffs in purported support of this propo-

sition involve challenges by property owners whose interests were directly affected by municipal action.[6] In the instant case, however, no plaintiff owns land or holds a lease in Mitchel Field.

■ In addition, plaintiffs argue that even if they do not have a right to receive particular contracts, they have an enforceable state law right, pursuant to N.Y. County Law § 215, to a bidding process free from manipulation or arbitrary procedures. However, in the 1979 AWARE action, the state court held that the provisions of Nassau County Administrative Code § 11–8.0, not County Law § 215 are applicable to the bidding procedures regarding Mitchel Field leases. Furthermore, even if County Law § 215 were applicable to this case, plaintiffs' claim is, in essence, merely one for tax relief. Under the principle of comity, such claims cannot be brought under § 1983, where the state provides "remedies that are plain, adequate, and complete. . . ." *Fair Assessment in Real Estate Association v. McNary*, 454 U.S. 100, 116, 102 S.Ct. 177, 186, 70 L.Ed.2d 271 (1981). Taxpayer remedies under CPLR § 3001, N.Y. General Municipal Law § 51 and Article 7 and state § 1983 actions are "plain, speedy, and efficient" within the meaning of *McNary*. *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 432 (2d Cir.1989). Therefore, taxpayer plaintiffs in this case must avail themselves of these state remedies rather than bring the instant federal civil rights action.

Finally, plaintiffs' claim that their rights to free speech, association and equal protection were violated by the alleged politically motivated award of contracts has been rejected by every court to consider it. *See, e.g., Downtown Auto Parks, Inc. v. City of Milwaukee*, 938 F.2d 705, 708–09 (7th Cir.), cert.

denied, —— U.S. ——, 112 S.Ct. 640, 116 L.Ed.2d 657 (1991); *Horn v. Kean*, 796 F.2d 668, 674 (3rd Cir.1986); *Sweeney v. Bond*, 669 F.2d 542, 546 (8th Cir.), cert. denied, 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982); cf. *Walentas*, 862 F.2d at 420 ("This court has recognized that Board of Estimate approval of a development project will be based on political considerations and the climate of public opinion").

Accordingly, plaintiffs' § 1983 claims must be dismissed.

B. *Plaintiffs Are Not a Protected Class Under 42 U.S.C. § 1985(3)*

■ Plaintiffs fail to state a claim under § 1985(3) because they do not represent a cognizable "class" protected under that section. The four elements of a § 1985(3) claim are "(1) a conspiracy (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges under the laws and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 829, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971); *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586–87 (2d Cir.1988).

The scope of § 1985(3) is narrower than that of § 1983. To state a claim under § 1985(3), a plaintiff must allege "some racial, or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Katz v. Klehammer*, 902

6. See, e.g., *Jackson Court Condominiums, Inc. v. City of New Orleans*, 874 F.2d 1070 (5th Cir. 1989) (condominium *owner* denied exemption from or waiver of ordinance restricting time shares); *Silverman v. Barry*, 845 F.2d 1072 (D.C.Cir.) cert. denied, 488 U.S. 956, 109 S.Ct. 394, 102 L.Ed.2d 383 (1988) (*owner* denied permit to convert apartment building to cooperative or condominium); *Bello v. Walker*, 840 F.2d 1124 (3d Cir.) cert. denied, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988) (*owner* denied permit after completing three phases in develop-

ment of housing project); *Sullivan v. Town of Salem*, 805 F.2d 81 (2d Cir.1986) (*owner* seeking to develop track denied certificate of occupancy); *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822 (1st Cir.), cert. denied, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982) (*owner's* subdivision and development plan denied); *Acorn Ponds at North Hills v. Incorporated Village of North Hills*, 623 F.Supp. 688 (E.D.N.Y. 1985) (*owner* denied certificate of occupancy for condominium units).

F.2d 204, 208 (2d Cir.1990) (quoting *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798). The statute does not "reach conspiracies motivated by bias towards others on account of their economic views, status or activities." *United Brotherhood*, 463 U.S. at 837, 103 S.Ct. at 3360. Furthermore, while it is questionable whether a "class" under § 1985(3) includes political parties, *id.* at 836, 103 S.Ct. at 3360, it is clear that the term "connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." *Bray v. Alexandria Women's Health Clinic*, —— U.S. ——, ——, 113 S.Ct. 753, 759, 122 L.Ed.2d 34 (1993). Moreover, the Second Circuit has held that a particular plaintiff's hostility to the policies of the dominant political party is not sufficient to make him a member of a protected class under § 1985(3) because " 'the intended victims [of discrimination] must be victims not because of any personal malice the conspirators have toward them, but because of their membership in or affiliation with a particular class.' " *Gleason v. McBride*, 869 F.2d 688, 695 (2d Cir.1989) (quoting *United Brotherhood*, 463 U.S. at 850, 103 S.Ct. at 3367 (Blackmun, J., dissenting)).

■ Like the plaintiff in *Gleason*, Blankman alleges only that he opposed the policies of the defendants and was denied a development opportunity because of that opposition. This is not sufficient to state a claim under § 1985. *Id.*

The remaining plaintiffs claim they were discriminated against on the basis of their political associations. They rely on *Keating v. Carey*, 706 F.2d 377 (2d Cir.1983), which holds that a § 1985(3) "class" can include a political party. However, even if *Keating* is still viable, *see Dwares v. City of New York*, 985 F.2d 94, 101 (2d Cir.1993) (advising district court, on remand, to consider the issue in light of *Bray*,) it is inapposite because plaintiffs here do not allege that they were discriminated against *because* they were Republicans or Democrats. Instead, they allege that they were discriminated against *by* Republicans who favored their political sup-

porters. Indeed, plaintiffs do not even reveal their party affiliations.

One can construe the Amended Complaint as identifying plaintiffs either in terms of economic classes or as a class consisting of all those who are aggrieved by defendants' alleged wrongdoing. Under either construction, the § 1985 claim must be dismissed. *Bray,* —— U.S. at ——, 113 S.Ct. at 759 (rejecting class made up of "those seeking to engage in the activity the defendant interfered with"); *423 South Salina Street, Inc. v. City of Syracuse*, 724 F.2d 26, 27–28 (2d Cir.1983) (affirming dismissal of a § 1985(3) claim where taxpayers would have been an economic class); *Carino v. Town of Deerfield*, 750 F.Supp. 1156, 1170 n. 17 (N.D.N.Y. 1990) (residential property owners are not a protected class under § 1985). Accordingly, plaintiffs' § 1985(3) claims must be dismissed.[7]

### C. *Statute of Limitations Bars § 1983 and § 1985 Claims*

■ Even if plaintiffs were able to state a cause of action under either § 1983 or § 1985, such claim(s) would be barred by the statute of limitations. The statute of limitations for an action arising in New York pursuant to 42 U.S.C. § 1983 is borrowed from New York's general statute of limitations for personal injury actions. *Gleason*, 869 F.2d at 691. Therefore, pursuant to CPLR § 214(5), the limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Day v. Morgenthau*, 909 F.2d 75 (2d Cir.1990), *cert. denied,* —— U.S. ——, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992). A three year statute of limitations also applies to an action commenced pursuant to § 1985. *See Hernandez–Avila v. Averill*, 725 F.2d 25, 27 n. 3 (2d Cir.1984); *Meyer v. Frank*, 550 F.2d 726, 728 n. 5 (2d Cir.), *cert. denied*, 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 90 (1977); *Younger v. Cloonan*, No. 90–3409C, 1992 WL 35881, at *3 (S.D.N.Y. Feb. 20, 1992); *Jones v. Coughlin*, 665 F.Supp. 1040, 1043 (S.D.N.Y.1987).

---

**7.** For the foregoing reasons, plaintiffs' request for enjoinment of further planning and construc-

tion at the NCCC and the Nassau County Sheriff's Farm is also denied.

Federal law governs when a § 1983 claim accrues. *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir.1980), cert. denied, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). In the Second Circuit, a § 1983 claim accrues when the plaintiff "knows or has reason to know" of the injury that is the basis of the action. *Cullen v. Margiotta*, 811 F.2d 698 (2d Cir.), cert. denied, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987); accord *Pauk v. Board of Trustees of City University of New York*, 654 F.2d 856, 859 (2d Cir.1981) cert. denied, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); see also *Wolf v. Wagner Spray Tech Corp.*, 715 F.Supp. 504, 509 (S.D.N.Y.1989) (" 'facts that should arouse suspicion ... are equated with actual knowledge of the claim' ") (citation omitted); *Anisfeld v. Cantor Fitzgerald & Co.*, 631 F.Supp. 1461, 1465 (S.D.N.Y.1986) (knowledge may be imputed to a plaintiff by reports, memoranda, private lawsuits and publicity); *Korwek v. Hunt*, 646 F.Supp. 953, 958 (S.D.N.Y.1986) (same), aff'd, 827 F.2d 874 (2d Cir.1987).

In the instant case, the Amended Complaint indicates that plaintiffs' last communication with any defendant regarding leasing land at Mitchel Field apparently took place at the County Executive's alleged meeting with Blankman in 1979. There is no allegation that any plaintiff applied for, discussed or was denied a lease or other contract since then.

Moreover, all of the Mitchel Field leases at issue were entered into by April 1986, well before the October 9, 1988 cut-off date for statute of limitations purposes. Thus, any economic or tax consequences of the leases were also established before 1988. In addition, the Nassau County Administrative Code

§ 11–8.0, which was allegedly enacted specifically to permit non-competitive bidding for Mitchel Field leases was passed in 1976. Therefore, defendants assert, plaintiffs' § 1983 and § 1985 claims must be dismissed as time-barred.

Plaintiffs respond that because defendants' wrongful actions in this case are ongoing, they amount to a "continuing violation," and the statute of limitations should not accrue until the completion of the last overt act.[8] See e.g., *Page v. United States*, 729 F.2d 818, 822–23 (D.C.1984) (applying continuing violation theory where the cumulative effect of drugs administered by the Veterans Administration over 19 years allegedly caused injury to a veteran). In addition, plaintiffs argue for the application of the continuing violation theory because the Mitchel Field leases at issue will be in effect, and therefore have economic and environmental consequences, for up to 99 years.

However, the mere fact that wrongful acts may have a continuing impact is not sufficient to find a continuing violation. See *Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 503–04, 66 L.Ed.2d 431 (1980) (continuing violation can not be based on the continuing effects of earlier unlawful conduct); *United Air Lines v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) (same). Moreover, "courts of this circuit consistently have looked unfavorably on continuing violation arguments ... and have applied the theory only under compelling circumstances." *Blesedell v. Mobil Oil Co.*, 708 F.Supp. 1408, 1415 (S.D.N.Y.1989).

In *Singleton*, the Second Circuit rejected the plaintiff's continuing violation theory in a

---

**8.** In the Amended Complaint, plaintiffs note that various County defendants were not even employed by the County subsequent to October 1988: Purcell left in 1977; D'Amato in 1980; Bennett in 1987; Colby in 1987; Komanoff in 1985; Parente in 1981; Smith in 1987; Cacciatore in 1988; Suozzi in 1987; and Tully in 1982. It is unclear how any of these defendants could have engaged in "continuing violations."

Furthermore, the Court notes that the Amended Complaint contains only two allegations as to events involving lessee defendants that occurred subsequent to October 9, 1988: (1) in November

1989, CHA and THIDA executed lease agreements relating to hotel additions and renovations to be financed by THIDA bonds; and (2) Mondello apparently attempted to assist L.B. Realty Co. in its efforts to develop housing for senior citizens on its leased property. However, the CHA/THIDA agreements are merely incidental to the rights flowing from the ZID Lease which was assigned to CHA in 1980 and plaintiffs do not even allege that L.B. Realty's proposal for senior citizen housing has been approved. Thus, neither allegation can serve as a basis for a continuing violation theory.

§ 1983 action.[9] In that case, the plaintiff asserted claims under § 1983 based on an alleged false arrest, assault and malicious prosecution. Although the false arrest and assault claims were time-barred, the plaintiff contended that all three claims were part of a continuing conspiracy to violate his civil rights. The *Singleton* court rejected that claim, stating that:

> [t]he crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action. To permit [plaintiff] to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable [plaintiff] to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims.

*Singleton*, 632 F.2d at 192. *See also Gleason v. McBride*, 715 F.Supp. 59, 63 (S.D.N.Y. 1988), ("In a § 1983 action involving separate wrongful acts, each claim must be analyzed separately to determine when it accrued and when the limitations period ran"), *modified on other grounds* 869 F.2d 688 (2d Cir.1989).

Plaintiffs have an obligation to use reasonable diligence in ascertaining that they have a claim. *Aronson v. New York City Employees Retirement System*, 757 F.Supp. 226, 230 (S.D.N.Y.1991). In the instant action, the allegedly improper Mitchel Field leases were approved at public meetings of the Board of Supervisors. Indeed, the terms of two Mitchel Field leases were known to Blankman as early as 1979 when he, as President of AWARE, initiated a suit contesting the legality of those leases.

Because all plaintiffs in this case knew or should have known of their claims at the time the leases were approved, there is no justification for the application of the continuing violation theory. *See Local 144 v. C.N.H. Management Assoc., Inc.*, 741 F.Supp. 415, 422 (S.D.N.Y.1990) (plaintiff who is aware of facts on which to bring administrative proceeding could have brought federal action at that time); *Auletta v. Tully*, 576 F.Supp. 191, 195 (N.D.N.Y.1983) (same), *aff'd*, 732 F.2d 142 (2d Cir.1984). Therefore, this Court finds that defendants' alleged wrongs regarding the leasing of Mitchel Field properties were separate, publicly known, independently actionable acts, clearly distinguishable from the continuing violations found in the racial discrimination and medical malpractice cases cited by plaintiffs. Accordingly, because all of the Mitchel Field leases were entered into prior to October 9, 1988, plaintiffs' claims related to these leases are time barred.

### D. State Law Claims

In cases involving federal claims and appended state claims "if the federal claims are dismissed before trial ... the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The Second Circuit has applied this rule to dismiss pendent state claims when federal claims under § 1983 have been dismissed. *See Powell v. Gardner*, 891 F.2d 1039, 1046–47 (2d Cir. 1989); *see also* 28 U.S.C. § 1367(c)(3). In light of the deficiencies in plaintiffs' federal claims, the pendent state claims are also dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[10]

---

**9.** The continuing violation doctrine "is usually employed in connection with employment discrimination suits...." *Day v. Moscow*, 769 F.Supp. 472, 477 (S.D.N.Y.1991), *aff'd*, 955 F.2d 807 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992). The Court notes that none of the continuing violation cases relied upon by plaintiff involves an action brought under either § 1983 or § 1985: *See, e.g., Bazemore v. Friday*, 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) (Title VII); *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners*, 927 F.2d 1283 (3d Cir.1991) (National Labor Relations Act and Labor Management Reporting and Disclosure Act); *Cook v. Pan*

*American World Airways, Inc.*, 771 F.2d 635 (2d Cir.1985), *cert. denied*, 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986) (Age Discrimination Act); *Hamilton v. Smith*, 773 F.2d 461 (2d Cir. 1985) (medical malpractice); *Drayton v. Veterans Admin.*, 654 F.Supp. 558 (S.D.N.Y.1987) (Title VII); *EEOC v. Sage Realty Corp.*, 87 F.R.D. 365 (S.D.N.Y.1980) (Title VII).

**10.** Because plaintiffs claims are dismissed pursuant to Rule 12(b)(6) and 12(b)(1), the Court does not address defendants' arguments regarding absolute and/or qualified immunity and plaintiffs' failure to plead fraud with particularity.

### III. CONCLUSION

Accordingly, for the foregoing reasons, defendants' motion to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure is granted.

SO ORDERED.